CHARLES H. BAKER, APPELLEE, V. FRANK FARNSWORTH ET AL.: GERTRUDE D. REED, APPELLANT.

REPORTED OCTOBER 8, 1928.  No. 25394.

*Gertrude D. Reed* and *S. E. Torgeson*, for appellant.

*Ballard & Anderson, contra.*

Heard before GOSS, C. J., ROSE, GOOD, THOMPSON, EBERLY and HOWELL, JJ., and REDICK, District Judge.

HOWELL, J.

This is a real estate mortgage foreclosure suit on ap-

peal. In 1919 one Farnsworth mortgaged lots to one Van Lanningham for $1,500, the mortgage being duly recorded. Van Lanningham shortly afterward, it is claimed, sold the note secured by the mortgage to Charles H. Baker, the plaintiff and appellee. No assignment of the mortgage appeared on record. Appellant, Miss Reed, owned a judgment against Farnsworth procured by assignment.

In 1923, Miss Reed employed W. J. Ballard, who appears in this case as attorney for appellee, to bring about an execution sale of the lots on the Reed judgment. The lots were bid in by Ballard as appellant's attorney, for her, for $25. The sale was confirmed February 4, 1924, and the sheriff's deed was delivered to appellant about that time. Early in 1925 appellee, Baker, employed Ballard to foreclose his mortgage. The necessary petition was filed in April, 1925, making the mortgagor, mortgagee, Farnsworth and wife, and appellant defendants, all of whom defaulted except appellant. Appellant's answer challenged the validity of the mortgage, charged that it was a sham and that it had been duly released of record by Van Lanningham in June, 1923, several months prior to the sale of the lots on her judgment.

Appellee, to meet that defense, contended that the appellant procured the release to the mortgage from Van Lanningham after he had assigned it and the note secured thereby to appellee with knowledge on the part of appellant of the previous assignment. Notice of the assignment of the mortgage and note was attempted to be proved in two ways: (a) Personal notice given to appellant by appellee, his brother, and a friend, or agent. (b) That prior to the execution sale appellee notified Ballard, then attorney for appellant, of the mortgage assignment, and that such notice became constructive knowledge of appellant.

Appellant denied both. The evidence, if it does not preponderate in favor of appellant, leaves the giving of personal notice in doubt. Upon the question of constructive notice, the evidence, admissions in the brief and in oral

arguments before this court show that appellee and his witnesses testified they told Ballard of the assignment of the mortgage to Baker before the execution sale; Ballard, in fact, did not inform appellant, his then client, of any such notification, but on the contrary he referred appellant to a stranger when she inquired of him concerning the title to the lots, and, apparently, purposely refused to tell his client anything; that Ballard and Baker, his agents and friends, were all acquainted and on good terms before the sale and at all times since, and if appellant did not have personal notice from appellee and his agents, the only knowledge appellant did have of the note and mortgage was constructive, through Ballard. But for the mortgage Miss Reed would have had clear title to the lots.

Before the trial commenced in the district court appellant vigorously protested against Ballard acting against her and for her adversary in a matter so closely connected with the title to the lots and its procurement for her by Ballard as her attorney. No witness, other than Baker, his agents and friends, testified concerning notice to Ballard of the assignment of the mortgage to Baker. Ballard did not testify for either the plaintiff or defendant, but put himself in the front line of battle in making proof of a very material fact against his former client, which, if not true, he alone could deny; and which he was, by reason of his then employment by Baker, greatly interested in allowing to pass by as true. Of course appellant could not have been expected to call a witness whose unfaithfulness had been previously demonstrated. If he had knowledge of the assignment of the mortgage, his duty was to tell his client at the time that knowledge was obtained. If he did not have such knowledge, the only honorable thing for him to do was to deny it. In either case he sought to prove his own wrong, to be right, in order to perpetuate his wrong, to the injury of his former client in a matter pertinent to the results he was then seeking. If that were all, perhaps, but only perhaps, his last client should not be made to suffer. Appellee does not have the excuse that

the only notice he had of the perfidy of his attorney toward the matter in hand was constructive. He was present at the trial when the true relations between Ballard and his first client were disclosed, and then knew that he (appellee) was asking the aid of the attorney to do an inexcusably unprofessional thing.

Whether appellee took the view that a continuing retainer would effectually close the mouth of Ballard, as a witness for appellant, against a denial by him of his knowledge need only be suggested, without asserting it to be true.

In *Fitzsimmons v. State*, 116 Neb. 440, opinion by Dean, J., this court held that two lawyers intimately and closely associated, by a limited partnership, could not appear, one for the prosecution and the other for the defense, in a criminal case. For that reason alone a conviction of Fitzsimmons of the crime of shooting with intent to kill was set aside. This court will not review a case of this sort, as a court of chancery, further than to reverse a decree procured by such indicated methods. The trial court should have excluded Ballard from the case. Lawyers should not expect the approval of courts and society of conduct which so reflects on a great profession, as well as upon the courts, as to justify public distrust already too much abroad. The decree of the district court is reversed and remanded at the cost of the appellee in both courts.

REVERSED.