**FLORIDA REALTY INC., Plaintiff,**

v.

**GENERAL DEVELOPMENT CORPORATION,
Defendant.**

No. 76–1809–Civ–CF.

United States District Court,
S. D. Florida.

Oct. 20, 1978.

R. W. Miller, Kevin Glynn of Miller, Simmons, Moore & Jung, Kansas City, Mo., and Jack F. Weins of Abrams, Anton, Robbins, Resnick, Schneider & Mager, P. A., Hollywood, Fla., for plaintiff.

George Feldmiller of Stinson, Mag & Fizzell, Kansas City, Mo., and Joseph Z. Fleming of Fleming & Neuman, Miami, Fla., for defendant.

### ORDER

FULTON, Senior District Judge.

This action for breach of contract and conversion was filed by Florida Realty against General Development Corporation

(GDC) in Missouri State Court on July 24, 1975. On December 3, 1975 it was removed to the United States District Court in Missouri, and on December 5th defendant sought removal of the action to the Southern District of Florida. That matter was contested by the parties. On October 8, 1976 an Order was entered transferring the case to the Southern District of Florida. At the time of transfer defendant's motion to disqualify plaintiff's attorneys was pending. The case was assigned to Judge Aronovitz, who on December 29, 1977 recused himself, and the case was referred to the undersigned shortly thereafter. A hearing on the pending motion was scheduled for February 27, 1978, which had to be postponed due to more urgent matters on the criminal calendar. A hearing was held on October 12, 1978, at which time both parties were represented by Missouri counsel, appearing *pro hac vice.*

The dispute as to whether plaintiff's counsel, R. W. Miller, of the firm of Miller, Simmons, Moore & Jung, should be permitted to represent his client on this action arises out of prior litigation in which both plaintiff and defendant participated. In order to fully comprehend the rationale of defendant's motion to disqualify Mr. Miller, the circumstances surrounding that prior litigation must be set out in full.

In June of 1968 the parties to this action allegedly entered into a contract whereby plaintiff would sell homesites for defendant. One provision of that agreement stated that the parties would abide by all applicable State or Federal regulations. On January 1, 1969 an amended definition of the term "security" in the Missouri Uniform Securities Act (§ 409.101) became effective, which expanded the definition of a security to include certain transactions in real estate. On April 8, 1968, defendant GDC filed a request for an exemption with the Missouri Securities Commissioner. On April 15, 1968, defendant was advised by the Commissioner that the exemption was not applicable and that registration would be required. GDC filed with the Commissioner, under protest, on May 23, 1968.

Florida Realty was not as willing to accede to registration. On December 23, 1968, Mr. Miller wrote the Commissioner stating that "we do not understand why our client is being required to register." On December 31, 1968, Mr. Miller wrote to GDC and first raised the possibility of resolving the question of registration in court. In his letter to GDC Mr. Miller stated:

> it seems to us that this [a holding that registration was not required] would be of extreme benefit to you, and that General Development would want to join in this procedure.

On June 13, 1969 the Commissioner informed the parties that they were both in violation of the Act. On July 3, 1969 GDC registered certain land transactions with the Commissioner, and Florida Realty registered as a broker-dealer. These registrations were allegedly made with assurances by both parties that certain purchasers of lots would be offered refunds on their purchases, upon entry of a final judgment in an action initiated by Florida Realty challenging the applicability of the Securities Act. At this point Florida Realty initiated that lawsuit in the Missouri Courts challenging the applicability of the Act. On January 17, 1972 the Missouri Circuit Court upheld the interpretation of Commissioner that registration was required, and that decision was affirmed by the Supreme Court of Missouri in 1974.

Defendant claims that it participated in this litigation to the extent of paying 50% of the litigation costs. The record is unclear as to the precise dollar amount GDC paid in connection with this litigation. The procedure was apparently one whereby Florida Realty would pay the law firm of Miller and O'Laughlin (predecessor to firm of Miller, Simmons, Moore & Jung), for its services and then seek reimbursement from GDC. During that early course of the litigation the parties appear to have enjoyed a harmonious relationship. As the litigation proceeded, however, the record indicates a deteriorating relationship. Ultimately, the attack on the applicability of the Securities Act proved unsuccessful and the parties

were faced with the spectre of paying significant reimbursements to purchasers with interest accruing from 1969 to 1974. A dispute also exists as to commissions due plaintiff for those reimbursed sales. The Court makes no findings whatsoever as to the liabilities of either party on this question. It is pointed out simply to demonstrate the relationship between the prior litigation in Missouri and the case presently pending before this Court.

In addition to GDC's role in financing the litigation arising out of the Securities Commissioner's adverse ruling, GDC also retained the firm of Miller and O'Laughlin in connection with the registration of land parcels under the Missouri Security Code from February through June of 1970. In that regard the firm of Miller and O'Laughlin spent 101.8 billing hours on GDC's behalf and billed the firm a total of $4,477.79 including cash advances.

Finally, defendant attaches great significance to a letter written by Mr. Miller to David Doheny of GDC after the adverse ruling of the Missouri Supreme Court in which Mr. Miller states:

> We will represent neither [Florida Realty or GDC] in any litigation that may ensue, but we probably cannot avoid testifying if either party should call us as a witness.

It is more than four years since this letter was written and, notwithstanding Mr. Miller's remarks, the firm is representing Florida Realty in this litigation and GDC has indicated that it intends to call Mr. Miller as a witness.

The question before this Court is whether the law firm of Miller, Simmons, Moore & Jung of Kansas City, Missouri and local counsel, Abrams, Anton, Robbins, Resnick, Schneider & Mager, of Hollywood, Florida, should be permitted to represent Florida Realty in this litigation. The parties are in agreement that the Code of Professional Responsibility as adopted by the Supreme Court of Florida governs this question.

Of particular applicability to the matter in issue today are the teachings on Canons 4, 5 and 9 of the Code of Professional Responsibility. The Disciplinary Rules of Canon 4 provide:

DR4–101(B)

> . . . a lawyer shall not knowingly:
>
> (1) Reveal the confidence or secrets of his client.
>
> (2) Use a confidence or secret of his client to the disadvantage of the client.
>
> (3) Use a confidence or secret of his client for the advantage of himself or of a third person, unless the client consents after full disclosure.

Disciplinary Rule 5–102(A) provides:

> If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial . . .

And perhaps most instructive in the matter presently at issue, Ethical Consideration 9–6 counsels:

> Every lawyer owes a solemn duty . . to strive to avoid not only professional impropriety but also the appearance of impropriety.

 It should be noted that the Canons of Professional Ethics are not mutually exclusive. Certain conduct which runs afoul of one Canon may also violate another. *See Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 234 nt. 17 (2nd Cir. 1977). This Court is convinced that the above quoted provisions of Canons 4 and 9 require that both law firms presently representing plaintiff, Florida Realty, be disqualified from any further participation in this case.

Today's Order does not intend to suggest that any one of the law firms in this action have violated their ethical responsibilities. Rather, the Court seeks to prevent a situation whereby a violation of the Canons of Ethics would be inevitable. The law firm of Miller and O'Laughlin maintained a direct attorney client relationship with the defendant in this action for a period of approximately six months. Moreover, the firm maintained an indirect relationship

with the defendant in the course of the Missouri Securities Act litigation for a period of over four years. Since the defendant GDC was paying 50% of the fees in that litigation, GDC was just as much Miller and O'Laughlin's client as Florida Realty. In the course of such an extended relationship an attorney naturally becomes familiar with the inner workings of a corporate client. Often confidences are revealed in an effort to fully prepare counsel in the presentation of a matter. It is difficult to perceive how the Miller firm could avoid using the knowledge gained in the course of that attorney client relationship with GDC to the detriment of its former client as the present litigation unfolds. Mr. Miller's letter of September 12, 1974 evidences his own misgivings about proceeding against GDC after maintaining an attorney client relationship with GDC.

At the hearing plaintiff's counsel argued that the present litigation is not substantially related to the prior litigation in Missouri, and thus disqualification is not required. The "substantially related" test was first articulated by the Courts in *T. C. Theatre Corp. v. Warner Bros. Pictures*, 113 F.Supp. 265, 268–69 (S.D.N.Y.1953), and was recently relied on by the Second Circuit in *Fund of Funds Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225 (2nd Cir. 1977). It states:

> the former client [must] show no more than that the matters embraced within the pending suit wherein his former attorney appears . . . are substantially related to the matters or cause of action where the attorney previously represented him, the former client. The Court will assume that during the course of the former representation confidences were disclosed.

*Fund of Funds, supra*, at 235.

While the legal theories giving rise to this cause of action are distinct from those of the previous litigation, the facts of the two cases are clearly intertwined. The question of what agreements were made between the parties as they launched their challenge against the Missouri Securities Commission-

er is central to this litigation. The exhibits filed with the Court further indicate that the relationship between the parties began to deteriorate as the Missouri litigation drew to an unsuccessful conclusion. Indeed, it appears that this litigation would not be pending before the Court today, had the parties succeeded in the prior litigation. In that sense the two matters are substantially related and Canon 4 requires disqualification of the Miller firm.

At the hearing before this Court, plaintiff's counsel also stated that no appearance of impropriety would result from the Miller firm's continued representation in this matter. The Court does not agree. The sanctity of the attorney client relationship has been carefully guarded at common law. If the relationship is to be an effective one, it must exist in an atmosphere of complete and open communication. If a client conducts legal affairs in a guarded and restrained manner out of fear that even the most innocuous statement to counsel may come to haunt him at a later date, our legal system will suffer. If the Miller firm is permitted to remain in this lawsuit that is the position GDC will be forced into.

Turning to the question of whether the Abrams firm must also be disqualified, the Court finds the *Fund of Funds* case particularly relevant. In that case the District Court disqualified only the law firm which had represented the opposing party in the prior litigation. The Court of Appeals held that the firm which had worked together as co-counsel with that law firm must also be disqualified. In summary, to permit the Abrams firm to remain in this litigation would be to permit the Miller firm to do indirectly what it is prohibited from doing directly—using knowledge gleaned from GDC in the prior litigation against GDC in this lawsuit.

■ Defendant also asserts that the prohibition of Canon 5 relating to an appearance by counsel as a witness also mandates disqualification. The standard is that disqualification is required when counsel "ought" to appear as a witness. The Court need not make a finding as to whether Mr.

Miller ought to be a witness in this case. The concerns of Canons 4 and 9 are sufficient to resolve the questions before the Court today. Thereupon, it is

ORDERED and ADJUDGED that the law firm of Miller, Simmons, et al. be disqualified from the present action. It is further

ORDERED and ADJUDGED that the law firm of Abrams, Anton, et al. be disqualified from the present action.