[No. 7618–7–II.   Division Two.   June 11, 1985.]

INTERCAPITAL CORPORATION OF OREGON, *Appellant,* v.
INTERCAPITAL CORPORATION OF WASHINGTON,
*Respondent.*

*Ernest L. Nicholson, Alan D. Judy, F. Douglas Ruud,* and *Diamond & Sylvester,* for appellant.

*John E. Glowney* and *Donald B. Myers,* for respondent.

REED, J.—Plaintiff Intercapital Corporation of Oregon (ICO) appeals from an unfavorable judgment entered in its suit against defendant Intercapital Corporation of Washington (ICW). The sole issue on appeal is whether the trial court erred in denying ICO's motion to disqualify ICW's counsel. We reverse.

In April of 1980, William Furman and Alan James, officers of ICO, met for 2 hours with attorney David McDonald for the purpose of retaining him as counsel for proposed litigation against ICW. According to Furman the controversy between ICO and ICW was discussed "in detail" after assurances of confidentiality had been given. Because McDonald already was representing U–Cart Concrete in a separate action against ICW, he later declined to represent ICO also. After the instant suit was initiated, Furman's deposition was taken by defendant's counsel from the law firm of Jones, Grey and Bayley (Jones, Grey). When defense counsel asked Furman to divulge the contents of the April 1980 meeting, McDonald asserted the attorney–client privilege for ICO.[1] Shortly before trial Jones, Grey associated McDonald in its defense of ICW.

Upon learning of this association, ICO promptly moved the court to disqualify both McDonald and the Jones, Grey

---

[1]McDonald was present at the deposition in his capacity as counsel for U–Cart Concrete, of which Furman was also an officer.

firm because McDonald's previous representation of ICO created an appearance of conflicting interests. In a colloquy with the trial judge, McDonald admitted discussing with Jones, Grey the April 1980 conversation but asserted that no privileged matter could have been revealed because he had forgotten the subject matter of the meeting.[2] Although ICO's counsel declined the trial judge's invitation to challenge the attorney's credibility, McDonald acceded to the trial court's suggestion and voluntarily withdrew from the case. After examining both the public and confidential affidavits of Furman and James, the trial court found that a substantial relationship existed between the instant suit and McDonald's conversation with ICO officials. However, the court denied ICO's motion to disqualify the Jones, Grey firm and ruled that any apparent conflict was "de minimis" because the confidences had not in fact been communicated. The court also noted that any continuance resulting from disqualification would cause a "detrimental effect upon the court calendar" and "substantial inconvenience" to ICW.

An attorney should be disqualified for the appearance of a conflict of interest (1) where the pending suit is "substantially related" to those matters on which the attorney "or someone in his association" previously represented the former client, and (2) where, even though the attorney did not represent the movant, he had "access" to these material confidences. *Kurbitz v. Kurbitz,* 77 Wn.2d 943, 947, 468 P.2d 673 (1970); *Burns v. Norwesco Marine, Inc.,* 13 Wn. App. 414, 417, 535 P.2d 860 (1975). Although here the presence of the first element is undisputed,[3] defendant

---

[2]For reasons unknown to us, McDonald was not sworn, although ICO's counsel suggested he should be. Because McDonald's ability to remember the conversation is not relevant to our holding, we will assume his unsworn statements constituted "evidence."

[3]The trial court's finding and ICW's concession that the April 1980 discussion with McDonald was "substantially related" to the instant action seem warranted by the length of that discussion and by McDonald's assertion of the attorney–client privilege for ICO during discovery in this action. Because this point has not

asserts that Jones, Grey neither had "access" to ICO's confidences nor represented it because McDonald also never represented ICO, had forgotten the information, and was not a member of the Jones, Grey firm. We disagree.

First, ICW has suggested that no attorney–client relationship came into existence between ICO and McDonald and that consequently McDonald did not "represent" ICO so as to give rise to disqualification. We do not agree. Neither an express nor an implied contract of employment is necessary. *See In re McGlothlen,* 99 Wn.2d 515, 522, 663 P.2d 1330 (1983). Nor is it necessary that an attorney actually give advice or perform services before a sufficient relationship can be established that will give rise to ethical responsibilities and possible future disqualification. It is enough that the attorney is consulted in that capacity, with a view to his being retained, and that as a consequence privileged matters are discussed and confidences disclosed. *See United States v. Trafficante,* 328 F.2d 117, 119–20 (5th Cir. 1964), *cited with approval in Kurbitz v. Kurbitz,* 77 Wn.2d at 947. As stated in *Westinghouse Elec. Corp. v. Kerr–McGee Corp.,* 580 F.2d 1311, 1319 (7th Cir.), *cert. denied,* 439 U.S. 955, 58 L. Ed. 2d 346, 99 S. Ct. 353 (1978), "[t]he fiduciary relationship existing between lawyer and client extends to preliminary consultation by a prospective client with a view to retention of the lawyer, although actual employment does not result." The proposition has also been stated thusly by respected authority:

> The privilege for communications of a client with his lawyer hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention to seek professional legal advice. . . . Communications in the course of preliminary discussion with a view to employing the lawyer are privileged though the employment is in the upshot not accepted.

(Footnote omitted.) E. Cleary, *McCormick on Evidence* § 88 (3d ed. 1984); *see also Taylor v. Sheldon,* 172 Ohio St.

---

seriously been challenged, we have not found it necessary to examine ICO's confidential affidavits.

118, 173 N.E.2d 892, 895 (1961). Here, the requisite attorney–client relationship arose when ICO officers consulted at length with McDonald with a view to obtaining his services and in the course of that discussion revealed material confidences and secrets. McDonald recognized as much when he claimed the privilege for ICO.

In *E.F. Hutton & Co. v. Brown*, 305 F. Supp. 371, 394 (S.D. Tex. 1969), the court puts this issue in proper perspective when it says:

> the basis for the rule against representing conflicting interests is broader than the basis for the attorney–client evidentiary privilege. The evidentiary privilege and the ethical duty not to disclose confidences both arise from the need to encourage clients to disclose all possibly pertinent information to their attorneys, and both protect only the confidential information disclosed. The duty not to represent conflicting interests, on the other hand, is an outgrowth of the attorney–client relationship itself, which is confidential, or fiduciary, in a broader sense. Not only do clients at times disclose confidential information to their attorneys; they also repose confidence in them. The privilege is bottomed only on the first of these attributes, the conflicting–interests rule, on both.

(Footnotes omitted.) *See also* CPR DR 4–101, EC 4–4.

Second, plaintiff need not prove that Jones, Grey actually possessed the confidential information disclosed to McDonald. Such knowledge is presumed where an attorney "might have" acquired privileged information as a result of a former representation. *See Kurbitz v. Kurbitz*, 77 Wn.2d at 946; *Alpha Inv. Co. v. Tacoma*, 13 Wn. App. 532, 535, 536 P.2d 674 (1975). Despite McDonald's lack of recall, he easily *might have* revealed confidences to Jones, Grey without realizing the original source of his information. It must be recognized that—at least from the former client's perspective—matters revealed in confidence may be used against the client in more subtle ways than actual communication to cocounsel. Consciously or subconsciously the attorney in whom the confidences were reposed, even though he does not relate or reveal them to cocounsel, may

employ information so gained in formulating strategy and tactics for the adverse party. It would be unreasonable to require the complaining former client to prove such actually has occurred. As stated in *Emle Indus., Inc. v. Patentex, Inc.,* 478 F.2d 562, 571 (2d Cir. 1973):

> Even the most rigorous self–discipline might not prevent a lawyer from unconsciously using or manipulating a confidence acquired in the earlier representation and transforming it into a telling advantage in the subsequent litigation . . . The dynamics of litigation are far too subtle, the attorney's role in that process is far too critical, and the public's interest in the outcome is far too great to leave room for even the slightest doubt concerning the ethical propriety of a lawyer's representation in a given case.

ICW, however, notes that some jurisdictions require proof of actual knowledge where the "tainted" attorney is not a member of the challenged counsel's law firm but only "associated" with it. *E.g., Brennan's, Inc. v. Brennan's Restaurants, Inc.,* 590 F.2d 168, 174 (5th Cir. 1979); *Akerly v. Red Barn Sys., Inc.,* 551 F.2d 539, 543–44 (3d Cir. 1977). However, such an exception is not universally accepted, *see Fund of Funds, Ltd. v. Arthur Andersen & Co.,* 567 F.2d 225, 234–35 (2d Cir. 1977); *Florida Realty, Inc. v. General Dev. Corp.,* 459 F. Supp. 781, 783–84 (S.D. Fla. 1978); *In re Howard,* 80 Misc. 2d 754, 363 N.Y.S.2d 711 (Sur. Ct. 1975), and we decline to adopt it.

The Washington rule expressly envisions the disqualification of an attorney who has had access to material confidences acquired by "someone in his *association."* (Italics ours.) *Kurbitz v. Kurbitz,* 77 Wn.2d at 947. This court has refused to impose burdens of proof that essentially would make disqualification impossible "where an *associate* of the attorney was responsible for handling the matter for the client." (Italics ours.) *Alpha Inv. Co. v. Tacoma,* 13 Wn. App. at 535. Further, an attorney temporarily associated with a law firm is not more likely to withhold from cocounsel his knowledge of privileged matters than is a member of the cocounsel's law firm. Both have a duty to represent

zealously their clients' interests, and both therefore have an apparent conflict of interest where they also have been privy to an opponent's confidences. We therefore decline to limit Washington's rule of disqualification on the basis of such a "hairsplitting nicety."[4] *See Kurbitz v. Kurbitz,* 77 Wn.2d at 946. Rather, we subscribe to the view that:

> While *Cinema 5* [*Cinema 5, Ltd. v. Cinerama, Inc.,* 528 F.2d 1384 (2d Cir. 1976)] relied on the nexus of partnership, we have also held that disqualification extends to individuals associated with a firm in a lesser capacity, for example, a law clerk. . . . And we have never believed that labels alone—partner, clerk, co–counsel—should control our decisions in so sensitive an area.

*Fund of Funds, Ltd. v. Arthur Andersen & Co.,* 567 F.2d 225, 234–35 (2d Cir. 1977).

On the record before us, however, we also decline to accept ICO's suggestion that because Jones, Grey knew of McDonald's previous representation of ICO it therefore must have associated McDonald on the eve of trial for the purpose of acquiring confidential information. A disqualification is not equivalent to a violation of the Code of Professional Responsibility;[5] here we look to the *spirit* of the canons rather than the *minimum behavior* proscribed by the Code's disciplinary rules. *Alpha Inv. Co. v. Tacoma,* 13 Wn. App. at 534. As stated in *Fund of Funds, Ltd. v. Arthur Andersen & Co.,* 567 F.2d at 227, the "[c]ompliance

---

[4]We find additional support for this holding in rule 1.10(b) of the proposed Rules of Professional Conduct that states:

"When a lawyer becomes *associated with* a firm, *the firm* may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired confidences or secrets protected by rules 1.6 and 1.9(b) that are material to the matter." (Italics ours.) 103 Wn.2d, Adv. Sh. No. 8, at xiii (Mar. 15, 1985).

[5]Implicated here, although alluded to only peripherally by the parties, are two canons contained in our Code of Professional Responsibility: Canon 4, reading as follows: "A lawyer should preserve the confidences and secrets of a client", and Canon 9, which states "A lawyer should avoid even the appearance of professional impropriety".

or noncompliance with Canons of Ethics frequently do not involve morality or venality, but differences of opinions among honest men over the ethical propriety of conduct." We simply hold that, whether or not McDonald *actually* violated the attorney–client privilege, his association with Jones, Grey provided the latter sufficient "access" to ICO's material confidences to warrant the law firm's disqualification.

▪ Finally, ICW asserts that, even if the motion to disqualify was denied erroneously, reversal is unwarranted because ICO has not shown that prejudice resulted. However, if evidence of an *actual* conflict of interest is required for reversal of a judgment, disqualification for an *apparent* conflict would be available only in those situations where interlocutory review of the trial court's ruling could be obtained.[6] *See Kurbitz v. Kurbitz, supra; Alpha Inv. Co. v. Tacoma, supra.* Requiring proof of prejudice would negate the presumption of knowledge created by an attorney's access to an opponent's material confidences. Such a prerequisite to reversal also would force disclosure of the very confidences the rule was intended to shelter, and defeat its purpose of developing and maintaining the public's respect for and confidence in our legal system. Accordingly, we hold that once an appearance of conflicting interests has been shown, prejudice will be presumed. *T.C. Theatre Corp. v. Warner Bros. Pictures, Inc.,* 113 F. Supp. 265 (S.D.N.Y. 1953); *Baker v. Farnsworth,* 117 Neb. 504, 221 N.W. 17, 18 (1928); *Whitewater v. Baker,* 99 Wis. 2d 449, 299 N.W.2d 584, 588 (Ct. App. 1980); *cf. State v. Boyd,* 560 S.W.2d 296, 298 (Mo. Ct. App. 1977); *Ex parte Spain,* 589 S.W.2d 132, 134 (Tex. Crim. App. 1979) (the rule applied in criminal cases). *But see National Bank of Commerce v. Fountain,* 9 Wn. App. 727, 733, 514 P.2d 194 (1973).

Here, such an apparent conflict has been shown by the

---

[6]Indeed, guided by the standards of RAP 2.3(b), both this court and the Supreme Court denied discretionary review in a connected case, where relief was sought on the exact same grounds.

association with defense counsel of an attorney to whom plaintiff disclosed matters substantially related to the present litigation. That McDonald was "cocounsel" to Jones, Grey rather than a member of the firm is irrelevant to the analysis.

Although as the trial judge stated, disqualification may entail "detrimental effect upon the court calendar" and cause "substantial inconvenience" to the present client, where as here the motion to disqualify is made early on, such considerations provide an insufficient basis for denying disqualification.

Reversed and remanded for new trial.

WORSWICK, C.J., and ALEXANDER, J., concur.

Reconsideration denied July 11, 1985.

Review denied by Supreme Court September 20, 1985.