**Felix J. KASKIE, et al., Plaintiffs,**

v.

**The CELOTEX CORPORATION, et al., Defendants.**

**No. 84 C 2008.**

United States District Court, N.D. Illinois, E.D.

Aug. 12, 1985.

---

Michael P. Connelly, Connelly, Ruberry & Mustes, Chicago, Ill., for Celotex Corp.

Lloyd E. Williams, Jr., Jacobs, Williams & Montgomery, Ltd., Chicago, Ill., for co-defendant Atchison, Topeka and Santa Fe Ry. Co.

### MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiff, who recently died, suffered from various illnesses allegedly caused by long-term exposure to asbestos. He claimed that these illnesses were caused by the defendants in violation of their legal obligations to him in that he was exposed to asbestos during and because of his employment with defendant Atchison, Topeka & Santa Fe Railway (Railway). Defendant Celotex allegedly manufactured certain asbestos products with which plaintiff worked. Currently before the court is Celotex' motion to disqualify Railway's counsel because of their access to information confidential to Celotex and other defendants in this action.

In 1982 Celotex and other asbestos manufacturers and distributors formed the Asbestos Defense Group (ADG) to coordinate discovery, plan strategy and facilitate the settlement of asbestos cases in state and federal court litigation. Celotex, Owens-Corning Fiberglass, Eagle-Picher Industries, Inc., Owen-Illinois, Nicolet, Inc. and Raymark Industries are both members of ADG and defendants in the present action. Standard Asbestos Manufacturing & Insulating Company (Standard Asbestos) is a member of ADG but is not a defendant here.

Late in 1984, the Railway filed a cross claim against all the defendants in the case. Since then the Railway has hired the law firm of Jacobs, Williams and Montgomery as additional counsel in the case. The same law firm, now called Williams and Montgomery, has represented and continues to represent Standard Asbestos in state court asbestos litigation and in meetings of the ADG.

Celotex has moved to disqualify the Williams firm from representing the Railway in its cross claim because of its involvement in the ADG. Celotex claims that confidential information was exchanged during ADG meetings that Williams can now use in litigating the Railway's cross claim against defendants. If confidences were exchanged, Williams and Montgomery's use of these confidences would be in violation of Canons 4 and 9 of the Code of Professional Responsibility.

## I.

Ill.Rev.Stat. ch. 10A, Canon 4, states: A lawyer shall preserve the confidences and secrets of a client.[1] Canon 9 states: A lawyer should avoid even the appearance of professional impropriety. If Canon 4 were read literally, Celotex might not have standing to assert this violation because it has never been a client of the Williams firm.[2] However, the concept of "client" has been broadened by the Seventh Circuit in *Westinghouse Electric Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1318–1320 (7th Cir.1978), to include a relationship between an attorney and another entity (person or corporation) which involves a fiduciary obligation resulting from "the nature of the work performed and the circumstances under which confidential information is divulged." *Id.* at 1320. Such a fiduciary relationship has been found to exist between counsel for co-defendants in a criminal case. *See Wilson P. Abraham Construction Corporation v. Armco Steel Corporation*, 559 F.2d 250, 253 (5th Cir. 1977), cited with approval in *Westinghouse Electric Corp. v. Kerr-McGee Corp.*, at 1319.

Canon 4 read broadly was meant to protect confidences obtained in the setting of such a fiduciary relationship. Judge Hart of this court has recently refused to read Canon 4 so expansively, requiring at least an "express or implied attorney-client relationship" to allow a disqualification under the canon. *International Paper Co. v. Lloyd Manufacturing Co., Inc.*, 555 F.Supp. 125, 132–33 (N.D.Ill.1982). He recognized a fiduciary obligation, however, and the right of a co-defendant to assert the violation of that obligation, and he was primarily concerned with how an alleged violation of that obligation should be determined. Tests for standing are different from tests which go to the merits. *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970). Rather than look at the "legal interest" created by the canon, the test for standing is whether Celotex' claim comes within the "zone of interest to be protected or regulated by the statute...." *Id.* Because Celotex claims a breach of confidence within the zone of confidential relationships protected by Canon 4, Celotex has standing under this canon to bring this claim although, as Judge Hart recognized, the manner of determining the merits of that claim differs when the party asserting the claim is a co-defendant rather than a client.

There can be little doubt that Celotex has standing under Canon 9, which addresses even the "appearance" of impropriety. Canon 9, as a rule of conduct, is directed as much to ensuring public confidence in the legal profession as it is to requiring certain conduct on the part of attorneys. *See Analytica, Inc. v. NPD Research, Inc.*, 708

---

1. Ill.Rev.Stat. ch. 110A, Rule 4–101 states in relevant part:
   (b) Except when [otherwise] permitted ... a lawyer shall not knowingly, during or after termination of the professional relationship to his client
   (1) reveal a confidence or secret of his client;
   (2) use a confidence or secret of his client to the disadvantage of the client; or
   (3) use a confidence or secret of his client for the advantage of himself or of a third person, unless the client consents after full disclosure.

2. Article III demands that the plaintiff allege injury in fact in order to obtain standing. *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979). There can be little doubt that Celotex has alleged injury in fact. Its liability in the case will be affected by the success of Railway's cross claim, which in turn may rest on the information Williams and Montgomery gathered at the ADG meetings.

F.2d 1263, 1269 (7th Cir.1983), *Freeman v. Chicago Musical Instruments Co.*, 689 F.2d 715, 721 (7th Cir.1982). Thus, Canon 9's zone of interest is as broad, if not broader, than Canon 4's, and Celotex has standing to assert a violation of Canon 9.

## II.

"The standard for disqualification of an attorney who undertakes litigation against a former client is the so-called 'substantial relationship' test." *LaSalle National Bank v. County of Lake*, 703 F.2d 252, 255 (7th Cir.1983). In the case where a law firm switches sides, the test means the firm may not represent an adversary of its former client

if the lawyer [or law firm] could have obtained confidential information in the first representation that would have been relevant to the second. It is irrelevant whether he [it] actually obtained such information....

*Analytica, Inc. v. NPD Research, Inc.*, *supra* at 1266. Using the *Analytica* approach, there would be an irrebutable presumption that actual confidences were disclosed between the Williams firm and Standard Asbestos that would preclude Williams from representing the Railway.

The Railway does not (nor could it) dispute the fact that the issues in its cross claim are substantially related to the issues discussed at the ADG meetings. However, this case differs from that presented in *Analytica* in one important respect: the disqualification motion is raised here by co-defendants, not by a former client against a present client. While an irrebutable presumption that the former client exchanged confidences with its attorney that it would like kept secret from the present client and adversary makes sense given the nature of the attorney-client relationship, such a presumption does not fit as easily into the context of co-defendants working together. Co-defendants and their attorneys are simply not as likely to "bare their souls" to each other.

■ Coupling the guarded confidentiality between co-defendants with the under-

standing that disqualification "is a drastic measure which courts should hesitate to impose except when absolutely necessary," *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d at 721, we hold that the presumption of shared confidences between co-defendants in a civil suit is rebuttable. *Accord International Paper Co. v. Lloyd Manufacturing Co., Inc.*, 555 F.Supp. 125, 133 (N.D.Ill.1982). Thus, "there must be a showing that co-d[efendant] actually obtained confidential information in the course of the prior representation which may be used in the present action to the detriment of [the former co-defendant]." *Id.* at 133–34. *See also Wilson P. Abraham Construction Corp. v. Armco Steel Corp.*, 559 F.2d 250 (5th Cir.1977) (rebuttable presumption of shared confidences between co-defendants in a criminal case).

For similar reasons, the Seventh Circuit has held that the presumption of shared confidences is rebuttable in the case where a member of a law firm changes jobs and her new firm is later retained by an adversary of a client of her old firm. *LaSalle National Bank v. County of Lake*, 703 F.2d 252 (7th Cir.1983); *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715 (7th Cir.1982). In these cases, the court placed the burden to rebut on the party fighting disqualification and required a clear and persuasive showing. *LaSalle National Bank*, at 257. We hold this stand applies in the co-defendant case.

Before turning to whether Railway has made such a showing, we note that this case has yet another twist. Williams and Montgomery continues to represent Standard Asbestos in state court asbestos litigation, and is therefore still involved in the ADG. While this situation presents no conflict of interest vis-a-vis Standard Asbestos directly, it may do so indirectly. The other members of the ADG against whom the Railway has counterclaimed may no longer want Standard in the ADG or be willing to discuss anything of any substance when Standard is present. Were this situation to occur, Williams would have weakened one client's position at the expense of anoth-

er's. But that is a matter between Williams and Montgomery and a fully-informed Standard, which has raised no objections here or anywhere else. Celotex cannot, however, base its motion to disqualify on such simultaneous representation because its motion is based on events that already have occurred and therefore involves *subsequent* representation of adverse interests. *See Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d at 1273 (Coffey, J., dissenting).

### III.

 Williams and Montgomery must show clearly and persuasively that it did not receive any confidences from Celotex during the ADG meetings. There are two avenues through which they can make such a showing. One is affidavits and documentation similar to that necessary to bring a summary judgment motion. As the court stated in *General Mills Supply Co. v. SCA Services*, 697 F.2d 704, 710 (6th Cir.1982), "a decision for disqualification is adequately founded without an evidentiary hearing if the 'factual inquiry' is conducted in a manner that will allow of appellate review, as it is when conducted on affidavits and documents that would be acceptable under Rule 56(e)". Williams has fallen woefully short of making such a showing. Apparently resting on the hope that Celotex would have the burden to prove confidential information was exchanged, Williams has submitted one affidavit one page in length. In it the attorney who attended most of the ADG meetings states simply that "to the best of my knowledge, I possess no secrets or confidences regarding the Celotex Corporation or any other co-defendant in this case." The court cannot base any decision on such scanty information.

The second avenue available to expose the evidence is an evidentiary hearing. *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d at 723 ("An evidentiary hearing is thus necessary to make these factual determinations."). Because no evidence has been presented upon which the court

can make a decision, and the fact that the parties hotly dispute what kind and how much information was exchanged in the ADG meetings, the court orders an evidentiary hearing.

### Conclusion

Celotex' motion to disqualify Williams & Montgomery from representing Railway in its cross claim against the defendants in the Kaskie case is continued and an evidentiary hearing ordered to determine whether the Williams firm gained secrets or confidences regarding Celotex at the ADG meetings.