Aaron L. WATSON and Rubena Watson,
d/b/a Watson's Antique
Shop, Appellees,

v.

H.A. MIEARS, Appellant.

No. 84–2315.

United States Court of Appeals,
Eighth Circuit.

Submitted April 12, 1985.

Decided Sept. 4, 1985.

Donald R. Roberts, Hot Springs, Ark., for appellant.

Sam Anderson, Hot Springs, Ark., for appellees.

Before ARNOLD and FAGG, Circuit Judges, and HARPER,* Senior District Judge.

HARPER, Senior District Judge.

This is a diversity action brought by Aaron L. Watson and Rubena Watson, d/b/a Watson's Antique Shop, citizens and residents of Arkansas, against H.A. Miears, a citizen and resident of Oklahoma, to recover an alleged balance due of $165,000.00 on a contract of sale between the Watsons as sellers and Miears as buyer.[1] The district court, 612 F.Supp. 1235, gave judgment for the Watsons in the amount of $146,045.33, together with interest from the date of judgment. For the reasons set forth below, we affirm.

In order to fully understand the dispute between the parties, a substantial statement of the facts is necessary. Appellees, Aaron L. and Rubena Watson, have operated an antique shop in Hot Springs, Arkansas for approximately thirteen years. Appellant, H.A. Miears, has been engaged in the antique business for approximately twelve years. Miears operates an antique shop in Oklahoma City, Oklahoma and purchases the inventories of other antique shops. After purchasing a shop's inventory, Miears usually holds an auction at the shop's location. However, in some instances he transports the merchandise to Oklahoma for sale.

On or about March 27, 1983 Miears, along with his associate, Georgette Draybek, visited appellees' shop to observe its contents. Miears subsequently returned to the shop to inquire whether the shop was for sale, and if so, at what price. Aaron L. Watson did not provide an answer at this time, but indicated that he would discuss it with his wife.

On April 2nd and 3rd, Mr. Watson took a complete inventory of the shop. Watson valued the contents of the shop at $392,-655.00. On a day on or before April 6th, Miears again visited the shop with Ms. Draybek. Miears took a "bulk inventory" of the shop to approximate the value of its contents. On April 6th, Miears offered appellees $250,000.00 for the shop's contents. Mr. Watson responded that he was willing to sell for $350,000.00.

Negotiations for the sale of the shop continued from April 6th to and including April 13, 1983. During this period, Miears, along with certain associates, visited the shop on several occasions. The shop remained open to the public and continued to conduct daily business affairs. During this period, not only were sales made from the shop, but Aaron and Rubena Watson each purchased various items of antiques which were added to the shop's inventory.

On the morning of April 13th, Miears and Ms. Draybeck went to the shop to inquire whether appellees were ready to accept appellant's offer of $250,000.00. Mr. Wat-

---

* The HONORABLE ROY W. HARPER, Senior U.S. District Judge for the Eastern District of Missouri, sitting by designation.

1. The contract provides in full:
"I, H.A. Miears, have purchased the entire contents (except contents of lay-a-way room and workshop) of Watson's Antique Shop located at 962 Airport Road, Hot Springs, Arkansas 71913. The purchase price is $250,000.00. Amount paid this date at April 13, 1983 is $85,000.00. It is also agreed that H.A. Miears has use of the property located at 962 Airport Road, Hot Springs, Arkansas 71913 for a period of 90 days ending on July 12, 1983. It is agreed that H.A. Miears can hold an auction on these premises for the purpose of liquidating stock, and may use the house next door to Watson's Antique Shop, 962 Airport Road, Hot Springs, Arkansas 71913 for the period of 90 days, ending July 12, 1983."

(Signatures notarized.)

son agreed to sell the shop's merchandise for appellant's offering price. The parties further agreed that Miears would pay $85,000.00 at that time and the balance no later than July 12, 1983. Miears and Mr. Watson went to the Grand National Bank later that morning to prepare the contract and sign it. Ms. Draybek remained at the shop while the parties were at the bank.

Upon their return from the bank, Miears and Mr. Watson began making final preparations to turn over the business to Miears. Mr. Watson gave Miears the keys to the shop, which Miears then gave to Bert R. "Sonny" Meyers, Jr., an employee of Miears. Meyers remained in Hot Springs to prepare for an auction to be held a few weeks later. Miears and Ms. Draybek returned to Oklahoma City with some merchandise from the shop shortly after Meyers took charge of the business.

The next morning, April 14th, Meyers entered the shop to begin preparing for the auction. Meyers allegedly observed that some things were missing from the shop. He called appellant that evening and reported "that there were quite a number of things that were not there."

Miears then returned to Hot Springs on April 16th and accused Watson of selling or otherwise disposing of items that were supposed to be in the shop. Miears sought legal advice from his attorneys as to whether he could get out of the contract. Notwithstanding the contract, Miears informed Watson that he was going to proceed to get back his $85,000.00 down payment.

On May 13, 14 and 15, Miears held an auction at Hot Springs to dispose of the shop's merchandise. Miears then transported some of the unsold merchandise to his antique shop in Oklahoma City. Miears took those actions without indicating to the Watsons either the quantity or quality of merchandise sold and transported.

On July 11th, the day before the balance was due under the contract, Miears directed a letter to the Watsons. The letter recited Miears' construction of certain contract provisions and accused Watson of taking substantial goods from the store. The letter additionally stated that Miears did not "intend to go any further with the deal", and concluded, "I consider the agreement rescinded as both parties are back in the position they were before."

The Watsons filed this action on August 9, 1983, alleging that Miears breached the contract of April 9, 1983, by refusing to pay the balance due in accordance with the contract. Miears in his answer does not deny his failure to pay the balance due, but asserts that appellees' wrongdoing relieved him of his contractual obligations.

Miears specifically claims that the Watsons misrepresented the quality and quantity of merchandise contained in the shop, and also, that subsequent to the signing of the contract the appellees, without appellant's knowledge or consent, removed merchandise from the shop valued in excess of $50,000.00. Appellant additionally claims that there were outstanding liens on the merchandise and that the Watsons had represented that all merchandise was free and clear of obligations. Miears asserts that as a result of appellees' wrongdoing he was damaged in the amount of $250,000.00.

The primary factual issue resolved at trial was whether appellees removed a substantial quantity of merchandise from the shop prior to or immediately after signing the contract. Both parties presented substantial evidence, predominantly in the form of oral testimony. The district court concluded that "the stock of antique merchandise was in the approximate amount, identity and value as the parties understood and agreed upon entering into a valid contract."

In reaching its conclusion, the district court emphasized that "[t]he primary question, as between the parties can only be determined by passing judgment on the credibility of the witnesses." The district court specifically found that the testimony of Sonny Meyers was "less than persuasive and presented a serious question as to credibility."

The lower court also concluded that Miears' claim concerning the alleged liens was without merit. The evidence clearly showed that the Honorable John Parkerson, representing the appellant, obtained satisfaction of the liens and so notified Miears.

After disposing of appellant's claims, the district court held that after acceptance of the goods, Miears deliberately and intentionally breached the contract, resulting in substantial damages to the appellees. The lower court concluded that the Watsons were entitled to recover the unpaid balance of the contract price, together with incidental damages. The district court relied on the applicable provisions of the Uniform Commercial Code, as adopted by Arkansas, Ark.Stat.Ann. §§ 85–2–101 et seq., in reaching its conclusion.

Miears contends on appeal that the district court's findings of fact are unsupported by the evidence presented at trial. We do not agree.

Appellate review of a trial court's findings of fact is extremely limited. Rule 52(a) of the Federal Rules of Civil Procedure provides: "[F]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Applying this standard, "if the district court's account of the evidence is plausible in light of the record viewed in its entirety, a court of appeals may not reverse even though sitting as the trier of fact, it would have weighed the evidence differently." *Phillips, et al. v. Program Resources, Inc.*, 767 F.2d 929 (8th Cir.1985), citing *Anderson v. Bessemer City*, —— U.S. ——, ——, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518, 528 (1985).

■ After carefully reviewing the record, we have not been left with a definite and firm conviction that a mistake has been made. See, *United States v. United States Gypsum Co.*, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948). Accordingly, the district court's findings of fact are upheld.

■ Appellant's second contention on appeal is that the district court's judgment is unsupported by the law pertinent to the issues. Appellant specifically contends that he relied upon appellees' affirmation that everything was there like it was when they had talked about it, and that such affirmation created an express warranty under § 2–313 of the Uniform Commercial Code (U.C.C.), Ark.Stat.Ann. § 85–2–313. Appellant also contends that he rightfully revoked his acceptance of the goods in accordance with § 2–608(1)(b) of the U.C.C., Ark.Stat.Ann. § 85–2–608(1)(b), and that his subsequent actions were permissible under the U.C.C.

In light of our holding that the district court's findings of fact are not clearly erroneous, appellant's contentions must fail as a matter of law. Assuming that appellees did expressly warrant to appellant that "everything was there like it was when [the parties] had [previously] talked about it," the district court's express finding that "the stock of antique merchandise was in the approximate amount, identity and value as the parties understood and agreed upon entering into a valid contract," precludes our finding a breach of the alleged express warranty as a matter of law.

Appellant's second contention must also fail for a similar reason. Under Ark.Stat. Ann. § 85–2–608, a buyer may revoke his acceptance of goods whose non-conformity substantially impairs its value to him. As appears from the statutory language, a buyer's right to revoke his acceptance of goods is conditioned upon the non-conforming character of the goods. If goods conform to the contract and the buyer has accepted them, the buyer does not have a right to revoke his acceptance. It is clear that whether goods are conforming is a question of fact. See *O'Neal Ford, Inc. v. Earley*, 13 Ark.App. 189, 681 S.W.2d 414, 416 (1985); *Frontier Mobile Home Sales v. Trigleth*, 256 Ark. 101, 505 S.W.2d 516, 517 (1974).

As stated above, the district court found the goods to be in the "approximate amount, identity and value as the parties

agreed and understood upon entering into [the] contract;" therefore, appellant never had a right to revoke under Ark.Stat.Ann. § 85–2–608, as a matter of law.

■ With respect to the computation of damages, U.C.C. § 2–709(1)(a), provides: "Action for the price (1) when the buyer fails to pay the price as it becomes due the seller may recover, together with any accidental damages under the next section the price (a) of goods accepted * * *." The evidence presented at trial amply supports the district court's finding that the goods were accepted in accordance with the contract. The appellant, therefore, is liable to the Watsons for the unpaid balance of the contract price, together with such incidental damages as found by the trial court, less the sum of $21,374.67, representing the proceeds realized from the court-ordered auction held December 10, 1984.

■ Appellant next contends that the district court's judgment was influenced by passion and prejudice. Appellant supports his argument by bringing this Court's attention to two statements made by District Judge Harris prior to trial.[2] Contrary to appellant's urgings, we do not find these statements indicative of passion or prejudice.

■ The statements reproduced by appellant were made by the district judge in order to inform the parties of the consequences that would follow from appellant's continual inexcusable conduct with respect to pre-trial discovery, which was causing serious delay in the litigation. Trial judges have the responsibility and authority to expedite the discovery process. See, *Societe Internationale, etc. v. Rogers*, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958), Rule 37(b), Fed.R.C.P. As the letters from which these statements were taken indicate, the case came to trial with much difficulty as a result of defendant's noncompliance with orders entered by the district judge compelling discovery and granting extensions. It is obvious from the context and circumstances in which these statements were made that Judge Harris was merely trying to expedite the litigation and not, as appellant would have us believe, commenting on the merits of the case. We accordingly find that the lower court's judgment is soundly based on the evidence presented and the law pertinent to the issues, and that appellant's allegation of passion and prejudice is without merit.

Appellant also asks us to find that the district court abused its discretion by not granting his motion for continuance filed April 23, 1984. Appellant argues that the district court's abuse of discretion stems from passion and prejudice on the part of the lower court.

■ It is a well settled point of law that a grant of continuance is within the sound discretion of the trial court, and that court's determination will not be overturned absent an abuse of discretion. See *Grunewald v. Missouri Pacific R.R.*, 331 F.2d 983, 986 (8th Cir.1964); *Janousek v. French*, 287 F.2d 616 (8th Cir.1961); *Fairway Center Corporation v. U.I.P. Corporation*, 502 F.2d 1135 (8th Cir.1974). A review of the exercise of discretion by a district court for a determination of abuse must be made on the facts and circumstances of the immediate case at hand. See, *Bowles v. Goebel*, 151 F.2d 671, 674 (8th Cir.1945).

■ Upon review of the facts and circumstances pertaining to this litigation, we find that the district court properly exercised its discretion in denying appellant's motion for continuance. Considering appellant's conduct during the discovery phase of this litigation, we can understand the district court's concern that appellant was attempting to use the continuance as a tactic for delay. As we stated earlier in this opinion, the district court is charged with the responsibility of expediting litiga-

---

**2.** These statements were taken from letters of Judge Harris, one to appellant's attorney, J. Sky Tapp, dated December 30, 1983, and the other to appellees' attorney, Richard S. Muse, dated April 1, 1984.

tion, and the court's decision concerning the motion for continuance was made in discharge of that responsibility and not as a result of passion and prejudice. We accordingly affirm the district court's order denying appellant's motion for continuance.

Appellant's final contention on appeal is that the district court erred in denying his motion for a new trial. Appellant's motion for a new trial filed on September 14, 1984 alleged, in pertinent part, that the lower court erred in denying his motion for continuance. As the specific facts and law concerning the district court's denial of appellant's motion for continuance have been set forth previously, we need not reiterate. Suffice it to say, that because we find the district court's denial of appellant's motion for continuance proper, and because appellant's motion for a new trial was primarily predicated on the allegation that the trial court erred in denying appellant's motion for continuance, we are disposed to find appellant's present argument to be without merit.

Accordingly, the judgment of the district court is affirmed.