**The UNITED STATES of America for the Use and Benefit of LORD ELECTRIC COMPANY, INC., Plaintiff,**

**v.**

**TITAN PACIFIC CONSTRUCTION CORPORATION and Safeco Insurance Company, Defendants.**

**No. C80–1109C.**

United States District Court,
W.D. Washington.

June 30, 1986.

Madeline A. Renkens, Barokas & Martin, Seattle, Wash., for plaintiff.

Richard L. Abramson, Peckar & Abramson, Hackensack, N.J., Douglas C. Ross, Davis Wright & Jones, Joni H. Ostergaard, Lizbeth A. Englund, Roberts & Shefelman, Seattle, Wash., for defendants.

## MEMORANDUM OPINION AND ORDER ON MOTION FOR DISQUALIFICATION OF COUNSEL

COUGHENOUR, District Judge.

THIS MATTER is before the Court on defendants' motion to disqualify counsel. The Court heard oral argument on the motion May 29, 1986, and issued a minute order denying the motion June 3, 1986. This memorandum opinion is submitted in conjunction with that minute order.

The motion arises out of the recent association of Rex Walker with counsel for plaintiffs. Walker was an associate and partner at Davis, Wright, Todd, Riese and Jones ("Davis Wright"), and its predecessor firms, for 23 years. While he was a partner at Davis Wright, Walker was contacted by Edwin Albom, Vice President of defendant Titan Pacific Corporation ("Titan"), with respect to the Indian Island Ordnance Facilities Relocation Project, which is the subject of this lawsuit. Titan was the general contractor at Indian Island in 1979 under a contract awarded by the Navy. Titan subcontracted the earthwork, utilities, electrical, and mechanical work to four firms—Spike Voudouris General Engineering Company ("Voudouris"), Tonneson Construction Company ("Tonneson"), Lord Electric Company ("Lord"), and Pease and Sons, Inc. ("Pease"), respectively. In 1977, problems between Voudouris and Titan developed, and in 1978, Voudouris left the construction site. The earthwork was completed by another subcontractor. In 1979, Voudouris filed a Miller Act claim against Titan. *United States for the Use and Benefit of Spike Voudouris v. Titan Pacific Construction Co., et al.* (W.D.Wash.) (Complaint filed Nov. 13, 1979). To defend that claim, Titan retained Davis Wright. It also appears from the affidavits of Edwin Albom and David C. Tarshes, an attorney at Davis Wright, that Rex Walker and Davis Wright were consulted at this time regarding potential claims by the remaining subcontractors. During this period Walker

signed and filed pleadings in the *Voudouris* matter, met and conferred with officials at Titan, and engaged in discussions and negotiations with Dale Martin of Barokas and Martin. Barokas and Martin had been retained as counsel by Tonneson, Lord and Pease. Tonneson, Lord and Pease each filed separate complaints against Titan on October 15, 1980.[1]

Walker left Davis Wright December 31, 1981, subject to an agreement not to compete in the practice of law in the area of Western Washington for a period of four years. In 1985, having been out of the practice of law for four years, Walker engaged in discussions with Marvin L. Gray and Allen D. Clark of Davis Wright about the possibility of returning to work at that firm. Walker also engaged in discussions with principals at Barokas and Martin regarding a non-participating association with that firm. Walker concluded an agreement with Barokas and Martin on December 18, 1985, and promptly notified Davis Wright. Walker became "of counsel" to Barokas and Martin January 1, 1986. By the terms of their agreement, Walker is assigned to work less than full time on discrete matters, and is compensated according to the hours he works and the earnings of the cases upon which he works directly. Walker does not participate in the general earnings of the firm.

In April, 1986, Dale Martin asked Walker whether he would consider working on the Miller Act suits that had been filed against Titan by Tonneson, Lord, and Pease in 1980. Walker reminded Martin that he had been Titan's counsel at Davis Wright in 1979–80. Barokas and Martin then sought Titan's consent to Walker's representation of plaintiffs in these three suits. Titan refused to consent and demanded that Barokas and Martin voluntarily withdraw as counsel. When Barokas and Martin refused to withdraw as plaintiffs' counsel,

---

1. *United States for the Use and Benefit of Tonneson Construction Co. v. Titan Pacific Construction Corp.,* No. C80–1108V (W.D.Wash.); *United States for the Use and Benefit of Pease and Sons, Inc. v. Titan Pacific Construction Corp.,* C80–1110C (W.D.Wash.).

the instant motion to disqualify counsel was filed.[2]

Defendants' motion raises two distinct issues: first, whether Rex Walker must be disqualified from representing plaintiff; and if Walker is disqualified, whether Barokas and Martin must then be disqualified as a consequence of their recent association with Walker.

### A. Walker's Disqualification.

Defendants assert that the Court must disqualify Rex Walker because his representation of plaintiff presents a risk that defendants' previously revealed confidences might be disclosed. According to defendants, Walker's representation would also present an appearance of impropriety.

■ When faced with an allegation that an attorney's representation presents a conflict of interest, it is "the duty of the district court to examine the charge, since it is that court which is authorized to supervise the conduct of the members of its bar." *Gas-A-Tron of Arizona v. Union Oil Co. of California*, 534 F.2d 1322, 1324 (9th Cir.1976) (per curiam) (citing *Richardson v. Hamilton Int'l Corp.*, 469 F.2d 1382 (3d Cir.1972)), *cert. denied*, 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976). In determining whether an attorney's representation of a particular client violates the attorney's ethical responsibilities, the Court first refers to the local rules regulating the conduct of members of its bar. *See Paul E. Iacono Structural Engineer, Inc. v. Humphrey*, 772 F.2d 435, 439 (9th Cir.), *cert. denied*, 464 U.S. 851, 104 S.Ct. 162, 78 L.Ed.2d 148 (1983). Local General Rule 2(e) of the Western District of Washington provides:

> "The members of the bar of this Court shall be governed by and shall observe the Canons of Professional Ethics, as

promulgated by the Washington State Supreme Court and in effect at the time these rules are adopted, together with any amendments or additions to such Canons of Professional Ethics, unless such amendments or additions are specifically disapproved by the Court."

Walker's representation of plaintiff should be forbidden, defendants argue, because it violates Rule 1.9 of the Washington Rules of Professional Conduct ("RPC"). Rule 1.9 would prevent Walker from representing plaintiff if the present matter is the "same or a substantially related matter in which [plaintiff's] interests are materially adverse to the interests of the former client unless the former client consents [to the representation]."[3] Titan has refused to consent to Walker's representation in this matter.

Under RPC 1.9, Walker should be disqualified if the pending suit is "substantially related" to the matters in which he formerly represented Titan at Davis Wright, and if he had access to material confidences. *Kurbitz v. Kurbitz*, 77 Wash.2d 943, 947, 468 P.2d 673 (1970); *Intercapital Corp. of Oregon v. Intercapital Corp. of Washington*, 41 Wash.App. 9, 11, 700 P.2d 1213 (1985). The Ninth Circuit Court of Appeals uses a similar test: an attorney will be disqualified from representing a client where that representation is adverse to a former client, and the present representation bears a substantial relationship to the attorney's former representation. *Trone v. Smith*, 621 F.2d 994, 998 (9th Cir.1980). Substantiality is present if the factual contexts of the two representations are similar or related. *Id.*

Walker seeks to avoid disqualification by averring that he was not in receipt of any confidential information regarding the claims of Tonneson, Lord, and Pease. He states in his affidavit that he received copies of the claims in October, 1980, that he

---

**2.** The Seattle law firm of Roberts & Shefelman prepared and filed the motion on behalf of defendants and Davis Wright.

**3.** Washington RPC 1.9 is substantially taken from the ABA's Model Rules of Professional Conduct. ABA Rule 1.9 provides in part:

> "A lawyer who has formerly represented a client in a matter shall not thereafter ... represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation."

did not review or analyze the claims then, and that he was not in receipt of the analyses of others regarding these same claims. Walker claims to have had no discussion with anyone from Titan regarding the substance or merits of those particular claims, that he merely forwarded the claims to the Department of the Navy, and that he did not at the time understand the interests of these three subcontractors and Titan to be adverse. It is uncontested that all of these cases arise out of the same construction project. The record reveals that the claims of the three plaintiffs represented by Barokas and Martin involve many of the same legal and factual issues that are raised in the Miller Act suit filed against Titan by Voudouris in 1979, and in which Walker had substantial responsibility. Even if Walker had had no involvement with the claims of Tonneson, Lord, and Pease, the identity of the issues between Voudouris' claims and the claims of the other Miller Act plaintiffs would be deemed to provide a "substantial relationship." *Compare, e.g., Government of India v. Cook Industries, Inc.,* 569 F.2d 737 (2d Cir.1978); *Emle Industries, Inc. v. Pantentex, Inc.,* 478 F.2d 562 (2d Cir.1973).

 Walker contends that he should not be disqualified because he actually received no confidences from Titan or its officers or employees during the course of his representation in 1979–80. This Court is not required, however, to inquire whether confidences were actually disclosed to Walker.

"[T]he underlying concern is the possibility, or the appearance of the possibility, that the attorney may have received confidential information during the prior representation that would be relevant to the subsequent matter in which disqualification is sought. The test does not require the former client to show that actual confidences were disclosed. That inquiry would be improper as requiring the very disclosure the rule is intended to protect. [citation omitted]. The inquiry is for this reason restricted to the scope

of the representation engaged in by the attorney."

*Trone v. Smith,* 621 F.2d at 999. *Accord, Intercapital Corp.,* 41 Wash.App. at 13–14, 700 P.2d 1213. *See also Novo Terapeutisk Laboratorium A/S v. Baxter Travenol Laboratories, Inc.,* 607 F.2d 186, 195 (7th Cir.1979) (on rehearing en banc) (inquiring into the *scope* of previous representation to determine whether matters are substantially related). The record indicates that after Walker was contacted by Edwin Albom of Titan, he billed 75.2 hours on matters relating to the Indian Island Project. Included in that time were one hour of conferences with plaintiff's counsel Dale Martin, and 8.8 hours of conferences with representatives of Titan. According to Edwin Albom, he and Walker discussed the Voudouris claim and the potential claims of Tonneson, Lord, and Pease in face-to-face meetings, telephone conversations, and in correspondence. The record contains a letter from Albom to Walker, dated October 16, 1980, in which Albom instructs Walker to "pass through" claims from Tonneson, Lord, and Pease to the Navy "without acknowledging their validity and without accepting any responsibility for any part of the claim," and to reserve rights for claims against the subcontractors. Also included is correspondence from Dale Martin to Walker regarding the nature of the claims to be submitted to the Navy and expressly reserving legal rights against Titan and its surety Safeco. It is clear that the scope of Walker's representation of defendants encompassed the potential claims of Tonneson, Lord, and Pease, although the representation occurred at a very preliminary stage in these proceedings. Nevertheless, it is reasonable to infer, given the scope of the representation, that during its course defendants did disclose confidences to Walker. *See Novo Terapeutisk,* 607 F.2d at 195–96. Walker describes his role during this period as insignificant in an apparent attempt to qualify for an exception to Rule 1.9 under the "peripheral representation" standard. *See Gas-A-Tron of Arizona,* 534 F.2d at 1325; *Trone v. Smith,* 621 F.2d at 998, n. 3; *Silver Chrysler Plym-*

outh, Inc. v. Chrysler Motors Corp., 518 F.2d 751, 754 (2d Cir.1975). The record indicates that Walker possessed significant responsibility in representing Titan in the preliminary stages of these cases, and that the scope of his involvement was not so "peripheral" as to allow him to represent plaintiff now. Nor is plaintiff's contention that its interests were not adverse to defendants in 1979–80 persuasive or relevant. The proper inquiry is whether the present representation is adverse to the former client, not whether the parties' interests were formerly adverse. See RPC 1.9.

Under the standards enunciated, Walker must be disqualified from representing plaintiff in this suit.

### B. Barokas and Martin.

Once Walker is disqualified, defendants argue that Barokas and Martin must be disqualified as well. Defendants contend that disqualification is required to protect against the risk that Titan's confidences will be disclosed to plaintiff's counsel, and to avoid an appearance of impropriety. Plaintiff responds that Barokas and Martin has successfully insulated Walker so that other members of the firm have not been and will not be privy to any Titan confidences Walker might possess.

The Court approaches its analysis of this issue with the awareness that disqualification is "a drastic measure which courts should hesitate to impose except when absolutely necessary." Freeman v. Chicago Musical Instrument Co., 689 F.2d 715, 721 (7th Cir.1982). In deciding whether to disqualify an entire law firm because a lawyer associated with that firm is presumed to possess a former client's confidences, the Court engages in a balancing of the parties' competing interests. The right of the former client to preserve confidences it has disclosed to its attorney must be weighed against a party's right to employ counsel of its own choosing. See Panduit

Corp. v. All States Plastic Mfg. Co., 744 F.2d 1564, 1576 (Fed.Cir.1984); Schiessle v. Stephens, 717 F.2d 417, 420 (7th Cir.1983); Freeman v. Chicago Musical Instrument Co., 689 F.2d at 721. The Court is particularly concerned that the motion to disqualify not be used as a strategic litigation tactic. See Richardson-Merrell, Inc. v. Koller, —— U.S. ——, 105 S.Ct. 2757, 2764, 86 L.Ed.2d 340 (1985); Smith v. Whatcott, 757 F.2d 1098, 1100 (10th Cir.1985). This Court agrees with the Seventh Circuit that motions to disqualify should be viewed "with extreme caution for they can be misused as a technique of harassment." Freeman v. Chicago Musical Instrument Co., 689 F.2d at 722.

The record in this case provides a substantial basis for viewing the defendants' motives in filing this motion with suspicion. The complaint was filed October 15, 1980. There ensued a series of tactics used by defendants to delay resolution of this and related cases for almost six years.[4] Defendants originally represented to the Court that resolution of the parties' dispute in administrative proceedings before the Armed Services Board of Contract Appeals ("ASBCA") would dispose of all issues in this litigation. On the basis of this representation, the Court granted a stay in 1981. Plaintiff's motion to lift the stay was denied April 25, 1983, after defendants' counsel had repeated their former representations that an ABSCA decision was imminent, and that proceeding with the case in this Court would be futile. When another year and one-half passed without the promised administrative resolution, plaintiff again sought to have the stay lifted. Over counsel's strident protestations, the Court granted plaintiff's motion to lift the stay on December 27, 1984. That decision was appealed to the Ninth Circuit Court of Appeals, and defendants filed yet another motion to stay these proceedings. The Court of Appeals dismissed defendants' interlocutory appeal June 22, 1985, obviating the

---

4. Defendants engaged in substantially identical behavior in United States for the Use and Benefit of Tonneson Construction Co. v. Titan Pacific Construction Corp., No. C80–1108V (W.D. Wash.); United States for the Use and Benefit of Pease and Sons, Inc. v. Titan Pacific Construction Corp., C80–1110C (W.D.Wash.).

need to reach the merits of their motion. No. CA85–3591. Had defendants been successful in persuading this Court that their positions were justified, and had the Court continued to rely on defendants' counsels' representations that an ABSCA decision was imminent, defendants would have delayed proceedings in the district court for four years, and the parties and the Court would still be "waiting for Godot."

The defendants have also repeatedly sought to avoid responding to legitimate discovery requests. After frustrating plaintiff's efforts to obtain documents for some time, defendants permitted plaintiff's counsel to travel to New Jersey, where counsel marked documents for production. Defendants' lead counsel agreed to ship the documents to Seattle within approximately one week. Thereafter, counsel for defendants delayed sending the documents for three months. Counsel's delay necessitated the filing of a motion to compel. Finding that counsel's conduct in not delivering the documents in a timely manner was totally inappropriate, the Court imposed attorneys' fees to be paid by counsel pursuant to Fed.R.Civ.P. 37(a)(4). As a consequence of defendants' dilatory actions, discovery in the case was delayed for several months. Defendants' persistent and continuous efforts to delay judicial consideration of the merits of plaintiff's case compel this Court to find, in light of the facts and circumstances of the case, that the motion to disqualify has been filed, at least in substantial part, with the purpose of delaying resolution still further.

■ Where a litigant uses a motion to disqualify as a tool to deprive its opponent of counsel of its choice, especially after substantial preparation of the case for trial has occurred, the court may properly find that the balance of the parties' interests tips sharply in favor of the non-moving party. *Cf. Central Milk Producers Cooperative v. Sentry Food Stores, Inc.,* 573 F.2d 988, 992 (8th Cir.1978) (court denies motion to disqualify where unreasonable delay in filing motion indicates purpose is to deprive party of counsel of choice). If the Court were to grant defendants' motion, it would impose upon plaintiff substantial prejudice and additional legal expenses. The most pernicious effect would be to reward a continuing pattern aimed at frustrating adjudication of the case in district court. The district courts possess inherent power to protect the integrity of their processes. *Cf. Koller,* 105 S.Ct. at 2764; *Sentry Food Stores,* 573 F.2d at 992–93. In denying the motion because the Court concludes it is not brought in good faith, the Court recognizes the "wisdom ... of adopting a restrained approach that focuses primarily on preserving the integrity of the trial process." *Armstrong v. McAlpin,* 625 F.2d 433, 444 (2d Cir.1980) (en banc), *vacated,* 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981). The Court concludes that that integrity may best be preserved by denying disqualification in this case.[5]

■ The courts have a duty to maintain public confidence in the legal system, *Gas-A-Tron of Arizona,* 534 F.2d at 1324, and to protect and enhance the attorney-client relationship in all its dimensions. *See Trone v. Smith,* 621 F.2d at 998. Although the "most important facet of the professional relationship served by this rule of disqualification is the preservation of secrets and confidences communicated to the lawyer by the client," *id.,* disqualification of law firms does not necessarily

---

**5.** Aside from the competing interests that parties might have in the motion to compel, there are broad policy implications raised by the motion. The first is the "importance of not unnecessarily constricting the careers of lawyers who started their careers at large law firms." *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.,* 518 F.2d at 754. Not only do overly strict ethical rules restrict an attorney's employment opportunities, they restrict the availability of legal services. Lawyers and firms will be inclined to refuse to accept representation of smaller clients with matters that do not generate substantial fees for fear that they would be forced to reject more lucrative representation in the future. Broadly-construed conflict of interest rules constrict the supply of services to those groups in our society that tend to have the greatest difficulty procuring legal representation.

enhance the public perception of the legal community, nor foster the highest ethical standards:

> "[J]udges must exercise caution not to paint with a broad brush under the misguided belief that coming down on the side of disqualification raises the standard of legal ethics and the public's respect. The opposite effects are just as likely—encouragement of vexacious [sic] tactics and increased cynicism by the public."

*Panduit Corp. v. All States Mfg. Co.*, 744 F.2d at 1576–77. The fact that disqualification may discredit the legal system obligates the Court to closely scrutinize allegations that a conflict of interest exists, while carefully avoiding the harsh and unnecessary consequences of an overly-broad construction of ethical norms.

 Notwithstanding the finding that the instant motion was not brought in good faith, the Court will analyze the merits of the motion to determine whether there is an alternative ground for decision. In doing so, the Court must engage in a careful sifting and weighing of all relevant facts and circumstances. *See In re Eastern Sugar Antitrust Litigation*, 697 F.2d 524, 530 (3d Cir.1982); *Akerly v. Red Barn System, Inc.*, 551 F.2d 539, 543 (3d Cir. 1977); *see also Schiessle v. Stephens*, 717 F.2d 417, 421 (7th Cir.1983) (determination on case-by-case basis).

 Analysis begins with the presumption that attorneys who work together share confidences. *See Novo Terapeutisk*, 607 F.2d at 196; *Akerly*, 551 F.2d at 543–44. It is presumed, then, that Rex Walker received confidences from Titan

which he shared with attorneys at Barokas and Martin. The Court will follow the strong trend in the federal courts and hold that the presumption is rebuttable. *See, e.g., Panduit Corp.*, 744 F.2d at 1580; *Schiessle v. Stephens*, 717 F.2d at 421; *Novo Terapeutisk*, 607 F.2d at 197; *Akerly v. Red Barn System, Inc.*, 551 F.2d at 543–44; *Kaskie v. Celotex Corp.*, 618 F.Supp. 696, 699 (N.D.Ill.1985); *Fred Weber, Inc. v. Shell Oil Co.*, 432 F.Supp. 694, 697 (E.D.Mo.1977). *Cf. Gas-A-Tron*, 534 F.2d at 1325 (rebutting presumption that all members of the firm acquire clients' confidences); *Silver Chrysler Plymouth Inc. v. Chrysler Motors Corp.*, 518 F.2d at 756–57 (same); *City of Cleveland v. Cleveland Electric Illuminating Co.*, 440 F.Supp. 193, 209 (N.D.Ohio) (same), *affirmed*, 537 F.2d 1310 (6th Cir.1977), *cert. denied*, 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85 (1978).[6] Unless plaintiff can present evidence that "clearly and effectively" rebuts the presumption that Titan's confidences have been disclosed by Rex Walker to anyone at Barokas and Martin or to anyone at plaintiff's company, the motion, if brought in good faith, should be granted. *See Freeman v. Chicago Musical Instrument Co.*, 689 F.2d at 723 (citing *Novo Terapeutisk*, 607 F.2d at 197). This standard of proof creates no conflict with the purposes behind the disqualification order nor is it a standard that is "unattainably high." *Id.; see also Laskey Bros. of West Virginia, Inc. v. Warner Bros. Pictures*, 224 F.2d 824, 827 (2d Cir.1955), *cert. denied*, 350 U.S. 932, 76 S.Ct. 300, 100 L.Ed. 814 (1956).

It is defendants' contention that even if the presumption is rebuttable, Barokas and

---

6. The Ninth Circuit has stated in dictum that once an attorney is disqualified, his entire firm must be disqualified. *Trone v. Smith*, 621 F.2d at 999. The Court stated that the firm as a whole is disqualified whether or not its other members were actually exposed to the information. *Id.* In stating this broad rule of firm-wide disqualification, the Court relied on *Westinghouse Electric Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311 (7th Cir.1978), and *Schloetter v. Railoc of Indiana, Inc.*, 546 F.2d 706 (7th Cir.1976). The Seventh Circuit, however, has since held that the presumption that a lawyer shares previously acquired confidences when he associates

with a new law firm is rebuttable. *See Schiessle*, 717 F.2d at 421; *Novo Terapeutisk*, 607 F.2d at 197. The authorities upon which *Trone* relies no longer accurately express the Seventh Circuit's position.

In *Paul E. Iacono Structural Engineer, Inc. v. Humphrey*, 722 F.2d at 442, the Ninth Circuit reiterated the dictum in *Trone* in disqualifying a firm. In *Humphrey*, there was "no evidence of specific measures the firm took to avoid ... disclosure of information." *Id.* Because the firm made no attempt to rebut the presumption, the statement in *Humphrey* was dictum also, and not binding on this Court.

Martin cannot produce evidence that they instituted a "Chinese Wall" between Walker and other lawyers in a timely fashion. Since Barokas and Martin did not implement "specific institutional mechanisms" at the time Walker associated with the firm in January, defendants argue the firm does not come within the recognized exception for firm-wide disqualification. *See, e.g., Smith v. Whatcott,* 757 F.2d at 1098, 1101–02 (10th Cir.1985) (requiring "specific institutional mechanisms" to be in place when firm accepts conflicting case); *EZ Paintr Corp. v. Padco, Inc.,* 746 F.2d 1459, 1462 (Fed.Cir.1984) (screening must be established when lawyer joins new firm); *Schiessle v. Stephens,* 717 F.2d at 421 (requiring that "specific institutional mechanisms" be in place when tainted lawyer joins firm); *LaSalle Nat'l Bank v. County of Lake,* 703 F.2d 252, 259 (7th Cir.1983) (screening established when potentially disqualifying event first arises). The Court of Appeals for the Ninth Circuit has expressed no opinion whether it would accept the "Chinese Wall" defense to a motion to disqualify a firm. *See Humphrey,* 722 F.2d at 422; *Trone v. Smith,* 621 F.2d at 999, n. 4.

Screening mechanisms that are established at the time a tainted lawyer joins a firm are the most reliable objective evidence available to rebut the presumption of shared confidences. The absence of a timely-established institutional screening procedure does not absolutely preclude the possibility that the presumption may still be rebutted. *See Hughes v. Paine, Webber, Jackson & Curtis Inc.,* 565 F.Supp. 663, 672–73 (N.D.Ill.1983); *Kadish v. Commodities Futures Trading Comm'n,* 548 F.Supp. 1030, 1035–36 and 553 F.Supp. 660 (N.D.Ill.) (1982). Evidence of a "Chinese Wall" is merely one method of rebutting the presumption. *See Panduit Corp. v. All States Plastic Mfg. Co.,* 744 F.2d at 1580 (Fed.Cir.1984) (applying Seventh Circuit law). Other competent and reliable evidence that clearly and convincingly shows that confidences have not been

shared in a firm may also rebut the presumption. The district courts are often called upon to make important and sensitive determinations; strict reliance on presumptions and formalistic screening devices prevents the district court from making the careful and sensitive inquiry demanded by a motion to disqualify, thereby raising the possibility that firms will be unnecessarily disqualified. Permitting a firm to present other evidence that rebuts the presumption of shared confidences respects the balance of interests and policies implicated by a disqualification motion, but does not require a client or attorney to reveal the client's confidences. In deciding whether an attorney is likely to have *received* confidences from a client, courts presume that confidences have been divulged if the scope of the former representation encompasses issues raised in a later representation. *See Trone v. Smith,* 621 F.2d at 999. The presumption protects a client from having to reveal confidences it is entitled to protect. *Id.* In determining whether a second firm has rebutted a presumption that a former client's confidences have been *shared* by a tainted lawyer, however, confidences that have not been shared need not be revealed.[7] The district courts may structure their inquiry so that unrevealed confidences remain protected. Retaining the flexibility to adjust its inquiry to the circumstances, a court may also determine whether additional measures to protect the integrity of the adjudicative process should be taken if it appears that confidences have been revealed either intentionally or inadvertently.

In determining whether Barokas and Martin has rebutted the presumption that Rex Walker has shared Titan's confidences with firm lawyers, the relevant factors to be considered include the nature of Walker's former representation of Titan, the time lapse between that representation and the present controversy, the nature of Walker's association with Barokas and Martin (including work assignments and salary arrangements), the likelihood that

---

**7.** If a tainted lawyer has breached his duty to preserve confidences by sharing them with other lawyers, there is an obviously diminished

reason to guard against further disclosures to the Court.

Walker has had contact with the lawyers responsible for handling the Titan litigation, and the presence and efficacy of "specific institutional mechanisms" to prevent the passage of information from Walker to other lawyers in the firm. *See Smith v. Whatcott,* 757 F.2d at 1101; *Schiessle v. Stephens,* 717 F.2d at 421; *Freeman v. Chicago Musical Instrument Co.,* 689 F.2d at 723. These factors must be evaluated with the purpose of guarding against both intentional and inadvertent disclosures to firm members. *See* 689 F.2d at 723; *cf. Intercapital Corp. of Oregon v. Intercapital Corp. of Washington,* 41 Wash.App. at 13–14, 700 P.2d 1213.

■ Based on the affidavits submitted by both parties, the Court makes the following findings: Walker's representation of Titan while he was at Davis Wright entailed significant responsibilities. On the other hand, Walker and Davis Wright were retained at the preliminary stages of this dispute before negotiation had been superseded by litigation, and when plaintiff's claims were of a "pass through" nature typical of this type of construction contract. Although the Court must presume that confidences were disclosed, it must also note that Walker was not likely to have become familiar with the particular details of the parties' disputes.[8] The materials submitted by Davis Wright in support of this motion indicate that Walker ceased working on Titan matters over a year before he left the firm. When Walker left, he took no notes or files pertaining to Titan. There ensued an unusual four years hiatus from the practice of law, before Walker returned to join Barokas and Martin in January, 1986. Walker is not likely to have retained more than a distant recollection of his former client's affairs when he returned to practice.

Walker's present association with Barokas and Martin is "of counsel." Since he joined the firm he has worked an average of approximately 70 hours per month. Although Barokas and Martin is a relatively small firm with a well-known specialization in construction litigation, Walker's peripheral involvement in the firm as a nonparticipating attorney makes it less likely that he has disclosed confidences to other lawyers working on this and related suits against Titan. *Cf. Akerly v. Red Barn System, Inc.,* 551 F.2d at 544 (finding co-counsel had not shared confidences). Although Walker has had contact with Dale Martin, who is involved in litigating this suit, Martin has stated by affidavit that he has had no discussions with Walker concerning the case, except in discovering that Walker had originally represented Titan. Once Dale Martin learned that Walker had represented Titan, he revealed the potential conflict to Titan, and requested that they consent to allow Walker to work on plaintiff's case. Martin's conduct was forthright, and reveals his firm's intention to conduct itself ethically in the matter. Moreover, upon learning of Walker's previous involvement in the case, Martin instructed all attorneys at Barokas and Martin that they were to have no conversations regarding the Titan cases in the presence of Rex Walker. *See Hughes v. Paine, Webber, Jackson & Curtis Inc.,* 565 F.Supp. 663, 673 (N.D.Ill.1983) (screening mechanisms instituted upon learning of conflict). Martin states in his affidavit that Walker's agreement with the firm is such that he has no financial interest in the Titan cases, and that Walker has not had access to the Titan files, which are under Martin's supervision.[9] *See, e.g., Smith v. Whatcott,* 757 F.2d at 1101 (screening should include denial of access to files, no share in fees or profits, discussion of case prohibited in the presence of tainted lawyer); *LaSalle Nat'l Bank v. County of Lake,* 703 F.2d at 259 (same).

■ To assure that Walker has not directly or inadvertently disclosed Titan's confidences to lawyers at Barokas and

---

**8.** Because the disputes between construction firms are often based on technical matters on which only experts in the field may make judgments, less vital information is conveyed in the early parts of a case. Not until significant discovery has been conducted, generally, do the rights and liabilities of the parties come into focus.

**9.** Although cases approving a "Chinese Wall" to avoid firm disqualification generally require that an attorney have no access to case files, *see,*

Martin, the Court will require the filing of supplemental certificates of assurance. Each of the lawyers at Barokas and Martin will be required to certify that:

(1) They have had no conversations regarding any Titan cases in the presence of Rex Walker;

(2) Rex Walker has conveyed no information regarding the nature and scope of his involvement in the Titan cases to anyone at Barokas and Martin, either directly or indirectly, to the best of the certificant's knowledge; and that Walker has made no comments regarding the Titan cases in the presence of anyone at Barokas and Martin, to the best of the certificant's knowledge; and

(3) The certificant will not speak of the cases in the presence of Walker in the future.

The certificates will, of course, be subject to Fed.R.Civ.P. 11. With the record supplemented by these certificates of assurance, the Court finds that there will be clear and convincing evidence that Walker has not disclosed Titan confidences to anyone at Barokas and Martin or the plaintiff's company.

██ Defendants' last argument for disqualification of Barokas and Martin is that, even if Walker has not disclosed Titan's confidences, his relationship with the plaintiff's counsel raises Canon 9's proscription against "even an appearance of impropriety" that requires the firm's disqualification. *See In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation,* 658 F.2d 1355, 1360 (9th Cir.1981), *cert. denied,* 455 U.S. 990, 102 S.Ct. 1615, 71 L.Ed.2d 850 (1982) (Canon 9 alone can be the basis for disqualification). Canon 9 of the former ABA Model Code of Professional Responsibility does not govern this Court's decision.[10] Local General Rule 2(e)(1) refers to the Canons of Professional

Ethics, as adopted and amended by the Washington State Supreme Court, as the ethical standards of its bar members. Like the recently promulgated ABA Model Rules of Professional Conduct, there is no provision in the Washington Rules of Professional Conduct that is equivalent to Canon 9. The overly broad effect that Canon 9 has had in causing firms to be disqualified has been severely criticized by members of the organized bar. *See* ABA Model Rules of Professional Conduct, comment to Rule 1.10 reprinted at 52 U.S.L.W. 10 (August 16, 1983); *see also Kadish v. Commodities Futures Trading Comm'n,* 548 F.Supp. at 1034. Under Local Rule 2(e)(1), this Court looks to the Washington RPC to determine the ethical standards by which the members of its bar are to be governed. *Cf. Humphrey,* 722 F.2d at 440. Because it is desirable that an attorney know what ethical norms are expected of him or her, *id.* at 438, it is inappropriate to exceed the bounds of the Washington RPC and disqualify attorneys merely on the basis of an "appearance of impropriety." Appearances of impropriety remain "too slender a reed on which to rest a disqualification order." *Armstrong v. McAlpin,* 625 F.2d 433, 445 (2d Cir.1980) (en banc), *vacated,* 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981); *see also Panduit Corp. v. All States Mfg. Co.,* 744 F.2d at 1576–77.

██ Finally, although plaintiff contends that defendants waived their right to object to the representation by waiting until April to file the motion, the record indicates that those attorneys who actively participate in representing Titan did not learn of the association of Walker with Barokas and Martin until about two months before the motion was filed. With trial still four months in the offing, the motion was pursued with sufficient diligence to avoid a waiver. *See Central Milk Producers Cooperative v. Sentry Food Stores, Inc.,* 573 F.2d at 992.

---

*e.g.,* cases in text, the precaution appears unrelated to preventing a tainted lawyer from revealing confidences to his present firm associates. The information that the tainted lawyer gains from case files has no bearing on the disclosure of a former client's confidences to other lawyers.

**10.** The ABA CPR has been superseded by the ABA Model Rules of Professional Conduct (adopted August 2, 1983).

ACCORDINGLY, the motion to disqualify is GRANTED as to the disqualification of Walker, and DENIED as to the disqualification of Barokas and Martin, CONDITIONAL on the filing of certificates of assurance by each lawyer at Barokas and Martin. The minute order entered June 3, 1986, is VACATED.

The Clerk of this Court is directed to send uncertified copies of this Memorandum Opinion and Order to all counsel of record.