**Bernard DAINES, Plaintiff,**

v.

**ALCATEL, S.A., a French corporation, Alcatel USA, Inc., a Texas corporation doing business in Washington, Defendants.**

**Bernard Daines, Plaintiff,**

v.

**Krish Prahbu, et al., Defendants.**

**Brooks Baltich, et al., Plaintiff,**

v.

**Krish Prahbu, et al., Defendants.**

Nos. CS–99–0219–JLQ, CS–99–0244–EFS, CS–99–0248–EFS.

United States District Court, E.D. Washington.

July 13, 2000.

Bryce J. Wilcox, Lukins & Annis, Spokane, WA, Robert G. Andre, Ogden Murphy Wallace, Seattle, WA, Robert C. Van Siclen, Van Siclen Stocks & Firkins, Auburn, WA, for plaintiff.

Peter D. Byrnes, Byrnes & Keller, Seattle, WA, Frederick B. Rivera, Perkins Coie LLP, Seattle, WA, for defendants.

## ORDER DENYING MOTION TO DISQUALIFY PERKINS COIE LLP

QUACKENBUSH, Senior District Judge.

Before the court is Plaintiff's Motion to Disqualify Perkins Coie (Ct.Rec.48(219), Ct. Rec. 45(244), Ct. Rec. 53(248)), which has been filed in all three cases listed above. The court held a hearing on this motion on June 28, 2000, before Judge Quackenbush. Judge Shea has reviewed the transcript of the hearing, and now joins Judge Quackenbush in this joint order. At the hearing, Bernard Daines, the moving party in each case, was represented by Robert Andre, Robert Van Siclen, and Bryce Wilcox. Perkins Coie LLP, the target of the motion, was represented by Peter Byrnes.

### I. Facts

The court finds that a joint resolution of the disqualification motions is proper in this case because the facts relevant to the motion

are not case-specific. Rather, the facts concern the ethical ramifications of a paralegal who has worked for two law firms which oppose each other in these cases.

The following facts are undisputed, unless noted otherwise. In the summer of 1999, paralegal Tess Nielson was working for the law firm of Lukins & Annis in Spokane, Washington. Lukins & Annis has a substantial role in this litigation. That firm, along with several others, represents Plaintiff Bernard Daines in the case before Judge Quackenbush, 99–219. Lukins & Annis also represents Plaintiffs other than Daines in one of the cases before Judge Shea, 99–248.

During Tess Nielson's tenure at Lukins & Annis, the disputes between Bernard Daines, other Plaintiffs, Alcatel, S.A., and Alcatel U.S.A., Inc. were being prepared for litigation. Nielson was assigned to work on these matters, among others, under the supervision of Lukins & Annis attorney Bryce Wilcox. Lukins & Annis's billing records show that Nielson billed 14.40 hours on Alcatel-related matters from May 1999 to September 1999. She spent that time assisting in the preparation of discovery requests and working to effect service on Alcatel, S.A., and Alcatel U.S.A..

In September 1999, Nielson resigned her position at Lukins & Annis and started a full-time job outside of the legal profession. She continues to work at that position. However, in April 2000, she was contacted by the Spokane office of Perkins Coie LLP, which wanted to know if she was interested in working for them on a freelance basis as a litigation paralegal. Perkins Coie is a major participant in this litigation. Attorneys from both the Seattle and Spokane offices of Perkins Coie represent the Defendants in all three of the cases pending in this court.

This was not the first time that Nielson had been in contact with Perkins Coie. Prior to working for Lukins & Annis, Nielson worked as a paralegal in the Seattle office of Perkins Coie, although she did not work on any matters related to Daines or Alcatel during that time. In the spring or summer of 1999, while she was working for Lukins & Annis, Nielson had approached Perkins Coie partner Roy Koegen to see if she could work in the Spokane offices of Perkins Coie. She was not hired at that time.

In addition, over the fall and winter of 1999–2000, Nielsen and Koegen had encountered one another several times at social gatherings. Both Nielsen and Koegen stated in depositions that on none of these occasions did they ever discuss what cases Nielsen was working on at Lukins & Annis.

In April 2000, however, Perkins Coie was under significant time pressure due to a complex trial set for that month before Judge Shea, *Qualchan v. City of Spokane.* Both the Seattle office of Perkins Coie and Mary Gaston, an associate in the Spokane office, indicated to Koegen that they needed assistance in preparing for that trial. Nielson was the solution.

On April 11, 2000, Koegen interviewed Nielson. It is not entirely clear who participated in the interview. Koegen stated in his deposition that he did not ask Nielson about the substance of the work she had performed for Lukins & Annis. Nielson, however, stated in her deposition that during the April 11 interview, she at least mentioned potential conflicts with Lukins & Annis. In addition to the Daines/Alcatel cases, Nielson had worked on two other cases while at Lukins & Annis in which Perkins Coie was the opposing counsel.

Koegen offered a position to Nielson on April 11, 2000. According to the offer letter, she was to be "a freelance paralegal" and the offer was subject to "any conflicts which might arise out of your previous employment." Nielson accepted the offer but did not start work until April 18, 2000, because she was on vacation until then.

On April 18, she reported to Perkins Coie in the late afternoon. She brought with her a completed conflicts check worksheet which she handed to a Perkins Coie representative. Although the conflicts check had not yet been completed, Nielson worked 6.5 hours on the

*Qualchan* case during the night of April 18. Koegen, Nielson, and Mary Gaston (the associate who supervised Nielson) all stated in their depositions that Nielson was sequestered in a separate room with access to only the *Qualchan* files and express instructions to work and discuss nothing but *Qualchan.* Koegen stated that he went so far as to tell every person in Perkins Coie's Spokane office that they were not to discuss with Nielson any matter other than *Qualchan.* There is no evidence before the court which would indicate that anyone violated Koegen's instructions.

The Seattle office of Perkins Coie ran the conflicts check the following day, April 19, 2000. During that day, Nielson was not present at Perkins Coie because she was working at her regular job. At 1:53 p.m. on April 19, the Seattle office sent a notice to all Perkins Coie attorneys and staff in all Perkins Coie offices that Nielson was to be screened from any and all discussion of matters related to Bernard Daines. When Nielson reported to Perkins Coie on the evening of April 19, she signed an affidavit in which she promised that she would not discuss information related to the Daines/Alcatel litigation with anyone at Perkins Coie.

On April 19, 2000, Koegen signed a letter to Lukins & Annis informing them that Perkins Coie had hired Nielson and that she was being screened on all matters related to Alcatel. It enclosed a copy of Nielson's affidavit and the screening memorandum Perkins Coie had sent to its personnel. Perkins Coie had the letter and attachments hand-delivered to Lukins & Annis on the morning of April 20, 2000.

On April 28, 2000, Lukins & Annis informed Koegen that the screening memorandum and affidavits had neglected to include the names of the numerous other individuals that Lukins & Annis represents in *Baltich, et al. v. Prahbu, et al.,* 99–248. On May 2, 2000, Koegen sent Lukins & Annis a revised affidavit in which Nielson promised additionally to refrain from discussing those parties. On May 12, 2000, Lukins & Annis informed Perkins Coie that Daines had serious concerns about the possible conflict and had hired additional counsel to review the matter.

May 12, 2000, was also the day that Perkins Coie terminated Nielson. Perkins Coie billing and pay records show that during her brief time at Perkins Coie's Spokane office, she worked only 46½ hours. The vast majority of her time was spent on *Qualchan.* The only time Nielson reported which was not related to *Qualchan* consisted of a one-and-one-half hour conversation with the paralegal coordinator on May 10, 2000, and a half hour spent assisting with the filing of a document on behalf of W.R. Grace on May 12, 2000.

In the current motions, Bernard Daines requests that this court disqualify Perkins Coie from further participation in this matter because of the possibility that Nielson disclosed litigation strategy or other secrets related to the Daines/Alcatel cases to Perkins Coie. He rests his motion on Washington's Rules of Professional Conduct. Perkins Coie maintains that Nielson was screened in accordance with Washington law and that the record is clear that Nielson never disclosed any information.

## II. The Merits of the Motion

### A. The Imputed Disqualification Rule Applies to Non-lawyers

■ Perkins Coie contends that Washington Rule of Professional Conduct 1.10, which contains Washington's imputed disqualification rule, does not apply to cases where the alleged disqualification is based on the "side-switching" of a non-attorney. This argument is based on the fact that RPC 1.10, read in isolation, refers only to "lawyers" and not to "non-lawyers."

■ However, Washington Rule of Professional Conduct 5.3 disposes of that argument. RPC 5.3(c) provides, in relevant part, that:

A lawyer shall be responsible for conduct of [a non-lawyer] that would be a violation of the Rules of Professional Conduct if

engaged in by a lawyer if ... the lawyer is a partner in the law firm in which the [non-lawyer] is employed, or has direct supervisory authority over the [non-lawyer], and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take remedial action.

This section charges attorneys with the responsibility of ensuring that non-attorney staff members follow the same ethics rules that apply to attorneys. If those non-attorneys violate those ethical obligations, the supervising attorneys can be held responsible. It follows that if a non-attorney possesses confidences acquired in previous legal employment but is not effectively screened by a new employer under RPC 1.10, the new employer may be disqualified.

This rule simply follows common sense. It is no secret that paralegals and other non-attorney staff members are regularly exposed to confidential client information as a part of their everyday work. Whether by such means as the filing of a confidential client letter in a case file or attendance at a strategical meeting, non-attorneys such as Tess Nielson often acquire sensitive information about their clients. To allow such employees to change firms at random and without concern for the information they have acquired would be to undercut the rules applicable to attorneys. RPC 5.3 recognizes that fact and this court will apply RPC 1.10's imputed disqualification rule to this case.

### B. The Screening Mechanism Was Satisfactory Under Washington Law

■ RPC 1.10 provides, when boiled down to its essence, that an attorney who acquired information about a particular case at one firm can work for an opposing firm without disqualifying the new firm if and only if the new firm effectively screens the attorney from any discussion of that case. The rule does not provide rigid guidelines for law firms to follow. Rather, it provides that a firm will not be disqualified because of the transfer if:

(1) The personally disqualified lawyer is screened by effective means from partic-

ipation in the matter and is apportioned no part of the fee therefrom;

(2) The former client of the personally disqualified lawyer receives notice of the conflict and the screening mechanism used to prohibit dissemination of confidential or secret information;

(3) The firm is able to demonstrate by convincing evidence that no confidences or secrets that are material were transmitted by the personally disqualified lawyer before implementation of the screening mechanism and the notice to the former client. RPC 1.10(b).

The rule further makes it clear that it is up to the court to determine whether a particular screening mechanism complies with these guidelines. RPC 1.10(b).

■ A few things are clear from the record. First, Nielson was not apportioned any part of the fee from Perkins Coie's representation of Alcatel. Second, there is no question that all of the parties represented by Lukins & Annis in this matter received notice of the screening mechanism. This leaves two more difficult issues: (1) whether there is "convincing evidence" that no confidences were divulged before the screening mechanism was implemented and (2) whether the screening mechanism was "effective."

As to whether there is "convincing evidence" that Nielson did not divulge any information before the screen was in place, Judge Quackenbush stated at the hearing that he was confident, beyond any doubt, that Nielson did not. Judge Shea now adopts that finding, as there is abundant evidence that Nielson worked on *Qualchan* in virtual seclusion on April 18. Perkins Coie has submitted depositions, affidavits, or both for each of its Spokane office employees and from Nieslon, all of whom indicate that they never discussed Bernard Daines, Alcatel, or any related matters with Nielson during her abbreviated employment. The evidence further indicates that the few files which the Spokane office had on the Daines/Alcatel matters (the cases are primarily under the purview of the Seattle office) were locked in

a room. Nielson did not even know where they were.

Daines has not produced any evidence of disclosure but maintains that Perkins Coie's evidence is nonetheless not "convincing." Daines claims that even if Nielson did not have access to the hard copies of the Perkins Coie files, she had access to computer copies of Perkins Coie documents. Apparently the contention is that Nielson could prejudice Daines by simply sneaking a peek at those documents, without more. Yet RPC 1.10(b)(3) is clear that the inquiry is whether Nielson *transmitted* confidential information to Perkins Coie, not whether she learned something that might have helped Lukins & Annis.

Daines also points out that all of the statements by Perkins Coie attorneys and staff, as well as the statements of Nielson, could be characterized as "self-serving." Yet, in the absence of any concrete indication that the entire Perkins Coie Spokane office is hiding the truth, this court has to conclude that the evidence is "convincing." Perkins Coie submitted the only evidence it could—the statements of the individuals who could have discussed the cases—and it submitted a large stack of it. The court is convinced that no confidential information was divulged.

This leaves the question of whether the screen of Nielson was "effective." Although this is apparently a different inquiry than whether there was any information "transmitted," the two issues are clearly interrelated. The most effective screen is one that results in no transmission of confidences. The court has already indicated that it is convinced beyond doubt that Nielson did not divulge any confidences.

Even if this is not enough to render a screen "effective," there are other indications that this screen was such. Perkins Coie implemented the screen within hours of receiving Nielson's conflicts check information. The screen was sent to all personnel in all of the firm's numerous branch offices. In addition, Perkins Coie records indicate that except for two hours, Nielson worked exclusively on *Qualchan*. The other two hours were spent on cases unrelated to Daines, Alcatel, or the other parties to this litigation. There is absolutely no indication that she worked with or even spoke to Ed Johnson, the only Perkins Coie attorney from Spokane who has appeared in Daines/Alcatel cases in this court, or that she had any contact with anyone in the Seattle office, which is the office leading the representation in the Daines/Alcatel cases. In addition, it cannot be ignored that she was a freelance employee who worked sporadically for a total of 46.5 hours over the span of three weeks, thus making it even more unlikely that she would have participated in any discussion of the cases in question. This screen was effective.

Daines argues for a more restrictive application of the ethics rules. According to Daines, a firm should be automatically disqualified whenever it allows a person to commence work before implementing a formal screening method. To support this position, Daines has cited a number of cases from other states that have adopted this rule. *See, e.g., In re Complex Asbestos Litigation,* 232 Cal.App.3d 572, 283 Cal.Rptr. 732 (1991). However, they are precisely that—cases from other states, applying the ethics rules of other states.

As Daines' counsel indicated at the hearing on these motions, Washington is one of a handful of states that has adopted an imputed disqualification rule which explicitly permits screening. Furthermore, the text of Washington's rule does not prohibit, and in certain situations appears to approve of, a screening mechanism that is implemented after employment begins. RPC 1.10(b)(3) makes it clear that as long as there is "convincing evidence that no confidences or secrets ... were transmitted ... before implementation of the screening mechanism," a firm can escape disqualification if the other requirements of the rule are met.

Daines, in effect, urges this court to follow the more restrictive rule that was effective in Washington prior to the adoption of the current 1.10 in 1992. That rule did not explicitly

permit screening as a way to avoid disqualification. In fact, the text of the rule was effectively a *per se* rule against "side switching" regardless of the circumstances. Yet even under that rule, the courts found that screening similar to that in this case was an effective means of avoiding the disqualification of an entire firm. In *United States v. Titan Pacific Construction Corporation*, 637 F.Supp. 1556 (W.D.Wash.1986), the court considered whether a hiring law firm was disqualified from representation in the case after it hired an attorney who had used to work for opposing counsel. Although there had been no screen in place with regards to the case for several months after the attorney was hired, and although the hiring firm had approached him about working on the case after forgetting about the conflict, the court nonetheless found that the firm should not be disqualified. The court was moved in particular by the fact that the attorney had been hired "of counsel" to perform work on specific cases other than the case in question, at an hourly rate. *See id.* at 1566. The court was also satisfied by the hiring firm's assertion that there had not been any improper disclosure, even though there was no way to verify that assertion. *See id.* at 1566–67.

Washington law does not require the implementation of a screen before employment, as long as there is convincing evidence that there was no disclosure before the screening and the screen, once implemented, is effective. As already noted, the screen in this case satisfies the Washington requirements.

This is not to say, however, that Bernard Daines had no reason to be concerned about the fact that a paralegal who used to work for the law firm representing him has now worked for some period of time for opposing counsel. The court is satisfied that nothing involving these cases was disclosed by Nielson to Perkins Coie. "Disqualification is 'a drastic measure which courts should hesitate to impose except when absolutely necessary.'" *Id.* at 1562, *quoting Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir.1982). The circumstances of this case do not indicate that disqualification is necessary. To the contrary, the record before the court indicates that nothing improper occurred or is likely to occur in the future.

**IT IS HEREBY ORDERED:**

1. The Motion to Disqualify Perkins Coie LLP (**Ct. Rec. 48 (CS–99–219–JLQ), Ct. Rec. 45 (CS–99–244–EFS), and Ct. Rec. 53 (CS–99–248–EFS))** is **DENIED**.

2. All further matters in these cases shall proceed as currently scheduled.

3. Defendants' Motion to File Overlength Brief in Opposition to Motion to Disqualify Perkins Coie (**Ct. Rec. 74 (CS–99–219–JLQ), Ct. Rec. 62 (CS–99–244–EFS), and Ct. Rec. 67 (CS–99–248–EFS))** is **GRANTED**.

4. Plaintiff Bernard Daines's Motion to File Overlength Reply Brief (**Ct. Rec. 81 (CS–99–219–JLQ) and Ct. Rec. 73 (CS–99–0244–EFS))** is **GRANTED**.

5. Third Party Defendant Bernard Daines' Motion for Order Granting Leave to File an Overlength Brief, (**Ct. Rec. 75–1 (CS–99–0248–EFS))**, is **GRANTED**.

**IT IS SO ORDERED.** The Clerk is hereby directed to enter this Order and furnish copies to counsel.