**John E. RICHARDS and Susan L. Richards, husband and wife, Plaintiffs,**

v.

**Naveen JAIN and Infospace, Inc., Defendants.**

**No. C00–2140Z.**

United States District Court,
W.D. Washington,
at Seattle.

Oct. 17, 2001.

Steve W. Berman, Sean R. Matt, Hagens Berman LLP, Seattle, WA, for plaintiffs.

Harry H. Schneider, Jr., Joseph M. McMillan, Brent Snyder, Perkins Coie, Seattle, WA, for defendants.

## ORDER

ZILLY, District Judge.

This matter comes before the Court on Defendants' Motion to Disqualify, docket no. 46. The Court heard oral argument on October 4 and took the matter under advisement. The Court having reviewed the briefs of the parties and considered the argument of counsel now GRANTS Defendants' motion. The law firm of Hagens Berman LLP is hereby disqualified from further representation of Plaintiffs in this case.

## BACKGROUND

Naveen Jain and Infospace, Inc. ("Defendants") move to disqualify Plaintiffs' counsel, Hagens Berman LLP ("Hagens Berman"), because counsel had access to attorney-client privileged documents. The following facts are undisputed. Hagens Berman came into possession of a Jaz Disk ("the Disk") containing copies of privileged documents in mid-to-late August 2000. The Disk (referred to at various times by both parties as a CD–ROM) was provided by plaintiff John Richards ("Richards") in response to a request by Hagens Berman for any documents supporting Richards' legal claims. Hagens Berman was aware at the time it received the Disk that it contained a copy of every e-mail stored on Richards' computer's hard drive. *See* Berman declaration at ¶¶ 2, 3, 4; Ex. B at 1, docket no. 57; Richards declaration at ¶ 6, docket no. 60.

The Disk contained copies of approximately 100,000 e-mails sent or received by Richards from other employees at InfoSpace. *See* Schneider declaration, Ex. D at 4, docket no. 48. On August 30, 2000, Mr. John Paris, the technology manager for Hagens Berman, copied e-mail files from the Disk to Hagens Berman's computer system. *See* Paris declaration, docket no. 58 at ¶¶ 3, 5. In mid-September 2000, a paralegal with Hagens Berman, Mr. Haegele, ran searches on the e-mail files and viewed all documents that contained at least one of the following terms in either the subject line or message body; "Naveen", "Jain", "YPI", "stock", or "options." *See* Haegele declaration, at ¶¶ 4, 5, docket no. 59. The search produced "thousands of emails." *Id.* at ¶ 5. Among those e-mails were documents clearly marked "Attorney–Client Privileged" that contained information subject to Defendants' attorney-client privilege and were relevant to this case. *See, e.g.,* Exs. 12, 14, 16, 23, 24, 26, 53, 68, 99 to McMillan declaration, docket no. 49. Hagens Berman does not dispute that it is "likely" Mr. Haegele reviewed documents subject to Defendants' attorney-client privilege. *See* Response Brief at 17, docket no. 68. During oral argument Mr. Berman conceded that some of the documents that he was permitted to review at the time of oral argument contained privileged matters and related to facts alleged in the complaint in this case. Mr. Haegele reviewed all the documents and sorted them into two groups: "relevant" and "not relevant." *See* Haegele declaration at ¶ 5, docket no. 59. Many of the privileged documents reviewed by Haegele on their face had clear warnings that the e-mails were subject to the attorney-client privilege.[1] The relevant documents were printed and then sent to Hagens Berman attorney Sean Matt who reviewed all of the "relevant" documents in September 2000. *Id.*

---

1. Many of the e-mail messages contained bold type language that stated "PRIVILEGED AND CONFIDENTIAL" or footers that gave the warning "This communication may contain privileged or other confidential informa-

tion." Others explicitly stated "Attorney–Client Privileged Communication" in the body of the e-mail message. *See e.g.,* Exs. 12, 14, 22, 23, 26 to McMillan declaration, docket no. 49

Upon re-creating the searches run by Hagens Berman on the imaged hard drive, Defendants state they found over 1,800 privileged documents that would have been viewed by Mr. Haegele. *See* Mittenthal declaration at ¶ 6; Ex. B, docket no. 60. Plaintiffs dispute this figure because it encompasses e-mails sent and received after December 1999. *See* Ex. B to Mittenthal declaration, docket no 60. Plaintiffs assert that they were unable to convert, view or search any e-mails dated after December 1999. *See* Paris declaration at ¶ 5, docket no. 58. The 1800 e-mails do contain messages sent and received after January 1, 2000. *See* Ex. 151 to McMillan declaration at binders 6, 7, 8, docket no. 49. However, even if the Court only considers e-mails sent or received prior to 2000, Hagens Berman's search technique would have retrieved 972 allegedly privileged e-mails. *See* Exhibit B to Mittenthal declaration. Thus, a member of Plaintiffs' law firm viewed almost one thousand privileged, potentially relevant, e-mails. *See id.* Moreover, the firm had in its possession access to thousands of additional privileged documents. *Id.*

This lawsuit was filed in December 2000, several months after Hagens Berman's in-house review of the privileged e-mails. In mid-April 2000, Mr. Haegele ran further searches on the files using the terms "Locator" and "Moroney" and produced thousands of additional e-mails all of which were printed and given to Mr. Matt without being reviewed by Mr. Haegele. *Id.* at

¶ 6. Matt reviewed these e-mails and sorted them into three categories, "relevant," "not relevant," and "privileged" (the privileged e-mails are allegedly subject to Mr. Richards' attorney-client privilege and not InfoSpace's). *See* Matt declaration at ¶ 8. The "relevant" documents were produced to Defendants. *Id.* There has been no showing that these particular search terms would have retrieved privileged documents. Hagens Berman asserts that e-mails that did not contain any of the search terms were not viewed by any person at Hagens Berman.

Richards was deposed on June 7, 2001. At his deposition, Richards confirmed that in or around August 2000, he had provided Hagens Berman with the Disk containing all e-mails "with anybody at InfoSpace." Exhibit E to Schneider declaration at 254, docket no. 48.[2] Thereafter, on June 15, 2001, defense counsel sent a letter to attorney Steve Berman asserting that as a result of Richards's deposition Defendants were now aware that Hagens Berman had in its possession a CD–ROM containing attorney-client privileged information. *See* Ex. A to Berman declaration, docket no. 57. Mr. Berman sent a responsive letter to Defendants on June 19, 2001, asserting that Defendants ought to have been aware for months that Hagens Berman possessed copies of Richards's e-mails and further, that no attorney at Hagens Berman had reviewed any privileged information or was aware that the Disk contained privi-

---

**2.** Remarkably, attorney Steve Berman admitted at oral argument that he never asked Richards whether the Disk might contain copies of privileged e-mails. Richards was a corporate vice president and Berman knew or should have known that Richards would have been privy to all sorts of privileged matter. Equally shocking to the Court is the failure of Mr. Berman to explicitly alert Haegele that the Disk might have confidential or privileged materials and to caution him to stop his work

if such were discovered. Finally, Richards was subject to a non-disclosure agreement and there is nothing in the record to indicate that Berman asked Richards about the existence of any type of agreements that would prevent disclosures. *See* Berman declaration, docket no. 57. Clearly Richards, who was a party to the Infospace non-disclosure agreement, knew that what was being provided to Hagens Berman contained privileged materials.

leged information. *See* Ex. B to Berman declaration, docket no. 57.

In mid-June Mr. Haegele was instructed by Mr. Matt to cease running searches on the e-mails and to insure that the Disk was in a secure location. *See* Haegele declaration at ¶ 8, docket no. 59. On July 27, 2001, Mr. Paris completely removed from the Hagens Berman computer system the folder containing the copied e-mails. *See* Paris declaration at ¶ 7, docket no. 58. On July 12, 2001, Defendants filed the instant Motion to Disqualify, docket no. 46. The Disk was filed with the Court under seal on July 27, 2001, docket no. 53.

## DISCUSSION

### A. STANDARD FOR DISQUALIFICATION

■ Federal courts have the authority to discipline attorneys appearing before them for conduct deemed inconsistent with ethical standards. *See In re Snyder,* 472 U.S. 634, 645 n. 6, 105 S.Ct. 2874, 86 L.Ed.2d 504 (1985). In general, disqualification is viewed as a "drastic remedy that exacts a harsh penalty from the parties as well as punishing counsel; therefore it should be imposed only when absolutely necessary." *In re Firestorm 1991,* 129 Wash.2d 130, 140, 916 P.2d 411 (1996). Disqualification may be necessary where a party has had access to privileged information such as where an attorney has a conflict of interest due to a prior representation. *Id.* The rule also applies equally to support staff that had access to privileged information due to former employment. *See Daines v. Alcatel, S.A.,* 194 F.R.D. 678, 681–82 (E.D.Wash.2000); *Intercapital Corp. of Oregon v. Intercapital Corp. of Washington,* 41 Wash.App. 9, 14, 700 P.2d 1213 (1985). Where the "asserted course of conduct by counsel threatens to affect the integrity of the adversarial process, [the court] should take appropriate measures, including disqualification, to eliminate such taint." *MMR/Wallace Power & Indus., Inc. v. Thames Assoc.,* 764 F.Supp. 712, 718 (D.Conn.1991) citing *Papanicolaou v. Chase Manhattan Bank, N.A.,* 720 F.Supp. 1080, 1083 (S.D.N.Y.1989). In considering disqualification courts "must be mindful that 'the interests of the clients are primary, and the interests of the lawyers are secondary.'" *Oxford Systems, Inc. v. CellPro, Inc.,* 45 F.Supp.2d 1055, 1066 (W.D.Wash.1999) citing *Haagen-Dazs Co., Inc. v. Perche No! Gelato, Inc.,* 639 F.Supp. 282, 286 (N.D.Cal.1986).

The undisputed facts in this case make it clear that disqualification of Hagens Berman is necessary to remedy the substantial taint placed on any future proceedings by the possession and review of the Disk. Disqualification is justified under three alternate theories. First, nonlawyers and lawyers are bound by the same ethical duties. Mr. Haegele's review of privileged material was an ethical violation regardless of his status as a paralegal. Secondly, Hagens Berman failed to fulfill its duties under RPC 5.3(b) when it did not take reasonable measures to ensure the ethical conduct of a nonlawyer. Lastly, Mr. Haegele's conduct in reviewing the privileged material and the knowledge gained by that review are imputed to the Hagens Berman firm under RPC 5.3(c). No matter through which ethical lens the possession and review of the Disk is viewed, it is apparent that eleven months of access to privileged materials creates an appearance of impropriety and so taints the proceedings that the harsh remedy of disqualification is justified.

### B. ETHICAL DUTIES OF NONLAWYERS

■ An attorney who receives privileged documents has an ethical duty upon notice of the privileged nature of the documents to cease review of the documents,

notify the privilege holder, and return the documents. *See* ABA Comm. on Ethics and Professional Responsibility, Formal Op. 94–382 (1994).[3] A failure by an attorney to abide by these rules is grounds for disqualification. *See Optyl Eyewear Fashion Int'l Corp. v. Style Companies, Ltd.,* 760 F.2d 1045, 1049 (9th Cir.1985) (holding that the appearance of professional impropriety can be a sufficient ground for disqualification); *Milford Power Ltd. P'ship v. New England Power Co.,* 896 F.Supp. 53, 58 (D.Mass.1995); *Williams v. Trans World Airlines, Inc.,* 588 F.Supp. 1037, 1045 (W.D.Mo.1984) (stating "the potential for unfair discovery of information through private consultation rather than through normal discovery procedures threatens the integrity of the trial process"); *In re Meador,* 968 S.W.2d 346, 350 (Tex.Sup.Ct.1998) (failing to comply with ABA Formal Op. 94–382 may require disqualification). Mr. Berman's suggestion in his response letter of June 19, 2001 (Ex. B to Berman declaration, docket no. 57) and at oral argument that an attorney in possession of attorney-client documents has no obligation except to give copies back or otherwise disclose the possession of the documents shocks the conscience of this Court. This is not a case where the defendants' own conduct or fault caused the delivery of the documents to Richard's attorneys. Once an attorney knew of the possession of the privileged documents he had an affirmative duty not to review the contents of the Disk and to return the Disk.

What keeps this case from being simple, however, is the fact that the review was conducted by a paralegal. There is no dispute that Mr. Haegele, a paralegal with Hagens Berman, viewed documents subject to Defendants' attorney-client privilege. *See* Response Brief at 17. Mr.

Haegele received privileged information, reviewed it, and neither ceased review upon notice of its privileged nature nor informed the privilege holder of its receipt. Not only did Mr. Haegele review the "thousands of documents" retrieved via the first search, but months later conducted a second search of the Disk. The question presented, therefore, is whether the Court should distinguish this case because the unethical conduct was conduct by a paralegal and not an attorney. In essence, Hagens Berman asks this Court to hold its paralegal to a lower standard of ethical behavior than its attorneys. The Court finds this argument to be without merit and contrary to the Washington Rules of Professional Conduct.

Courts have interpreted the Washington RPC regarding confidential information to apply equally to paralegals as to attorneys. "This section [RPC 5.3] charges attorneys with the responsibility of ensuring that non-attorney staff members follow the same ethics rules that apply to attorneys." *Daines,* 194 F.R.D. at 682. For purposes of disqualification, courts have therefore treated paralegals and other non-attorneys as having the same ethical responsibilities regarding confidential information as attorneys. *See id.* at 682 (recognizing that applying a lower standard to the conduct of paralegals would "undercut the rules applicable to attorneys"); *see also, Intercapital Corp. of Oregon,* 41 Wash.App. at 14–15, 700 P.2d 1213; *Ciaffone v. Eighth Judicial District Court,* 113 Nev. 1165, 945 P.2d 950, 953 (1997) (holding that nonlawyers should be treated identically to lawyers under the Supreme Court Rules of Nevada); *Zimmerman v. Mahaska Bottling Co.,* 270 Kan. 810, 19 P.3d 784, 790 (2001)

---

**3.** At the time of the first review of the Disk, there was no ongoing litigation and no "opposing counsel." Therefore, the obligation of the paralegal through Hagens Berman would have involved disclosure to InfoSpace.

(finding rules similar to Washington's RPC to apply "equally ... to nonlawyer employees"); *MMR/Wallace Power & Indus., Inc.,* 764 F.Supp. at 718; *Williams,* 588 F.Supp. at 1044 (finding that the only way "to preserve public trust in the scrupulous administration of justice" is to hold nonlawyers to the same standards as lawyers). The Court finds that under the Washington RPC the actions and conduct of nonlawyers regarding privileged information are to be held to the same ethical standards as attorneys.

■ Therefore, the Court considers whether Mr. Haegele's conduct requires disqualification without regard to his status as a paralegal. Accordingly, as this Court would without question disqualify Hagens Berman had it been Mr. Berman or Mr. Matt that conducted the full review of the Disk, the Court must come to the same conclusion based on Mr. Haegele's review of the privileged materials.

## C. DUTY TO TAKE REASONABLE MEASURES TO ENSURE ETHICAL CONDUCT OF NONLAWYERS

Mr. Berman and Mr. Matt had a duty under the RPC to ensure the ethical behavior of staff members under their supervision. Therefore, the Court must consider the ethical conduct of Hagens Berman's attorneys in allowing Mr. Haegele to review the Disk. RPC 5 .3 states in relevant part:

> (b) A lawyer having direct supervisory authority over the non-lawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer;

RPC 5.3(b). It is undisputed that attorneys Berman and Matt had direct supervisory authority over Mr. Haegele. *See* Haegele declaration at ¶¶ 3, 5, 6, docket no. 59. It was therefore their duty to ensure that Mr. Haegele complied with professional obligations under RPC 5.3(b). Considering the facts in the record, Mr. Berman and Mr. Matt failed to fulfill this duty.

■ It is reasonable to assume that as a corporate Vice President, Richards would have had discussions with attorneys regarding the corporation's business and litigation and be in possession of attorney-client privileged documents. A reasonably diligent attorney would have *at the very least* inquired, prior to requesting the Disk, if Richards was privy to privileged information or if Richards had exchanged e-mails with counsel. It does not appear that anyone at Hagens Berman made this inquiry. The Court finds Mr. Matt's and Mr. Berman's statements that they "never once considered that the e-mails [Richards] provided to us could contain information subject to InfoSpace's attorney-client privilege" to be a failure of reasonable care, approaching recklessness. *See* Matt declaration at ¶ 5, docket no. 61; Berman declaration at ¶ 6, docket no. 57. Secondly, upon instructing Mr. Haegele to perform searches on the contents of the e-mails, Mr. Haegele ought to have been clearly told to cease reviewing documents if any question arose as to whether the Disk contained privileged information. Mr. Haegele reviewed literally hundreds of documents that were on their face privileged and informed no one and did not stop reviewing the documents. Mr. Haegele stated at oral argument that he simply ignored the privilege banners. The Court concludes that Hagens Berman did not make "reasonable efforts to ensure that the [Mr. Haegele's] conduct [was] compatible with the professional obligations of the lawyer." This is a violation of RPC 5.3(b).

■ A failure to properly supervise paralegals and other staff members would

certainly not create a per se rule of disqualification. However, under the circumstances presented here, Mr. Berman's and Mr. Matt's failure to take any reasonable measures to protect the attorney-client privilege through proper supervision of a paralegal creates an appearance of impropriety. When such an impropriety "is clear, affects the public view of the judicial system or the integrity of the court, and is serious enough to outweigh the parties interests in counsel of their own choice" disqualification is justified. *Optyl Eyewear Fashion Int'l Corp.,* 760 F.2d at 1049. The Court finds that this is such an impropriety that justifies disqualification.

## D. CONDUCT AND KNOWLEDGE OF NONLAWYER IS IMPUTED TO FIRM

Under RPC 5.3(c), as soon as Mr. Berman or Mr. Matt knew of the unethical conduct, i.e. that Mr. Haegele was reviewing privileged information, they were required to take remedial action to mitigate the effects of the conduct. Failure to do so makes the attorneys responsible for the actions of the nonlawyer and thereby imputes the conduct and knowledge of the paralegal to the attorneys. RPC 5.3 states:

> (c) A lawyer *shall be responsible for* conduct of [a nonlawyer] that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if . . . the lawyer is a partner in the law firm in which the [nonlawyer] is employed, or has direct supervisory authority over the [nonlawyer], and knows of the conduct at a time when its consequences can be

avoided or mitigated but fails to take remedial action.

RPC 5.3(c) (emphasis added). Mr. Berman contended at oral argument that he did not violate this aspect of RPC 5.3 because he never knew that the Disk contained privileged information until it was brought to his attention by opposing counsel. Mr. Berman argues in essence that RPC 5.3(c) does not incorporate the concept of constructive knowledge but requires evidence of actual knowledge. The Court finds this argument to be meritless and contrary to the purpose of the rule. Hagens Berman cannot turn a blind eye to the obvious to avoid their ethical duties. Therefore, the Court applies Rule 5.3(c) to those instances wherein, but for recklessness or actions other than inadvertence, an attorney would have known of the conduct.[4]

The Court finds that upon requesting the Disk and learning that it contained every e-mail from Richards's hard drive, Hagens Berman had constructive knowledge that the Disk contained privileged e-mail. Shortly thereafter Haegele reviewed the documents and selected "relevant" documents for review by the attorneys. Haegele "knew" or should have known that these materials were privileged. Therefore, the failure to take steps to prevent the review of privileged information or remediate the effect of the review by removing Mr. Haegele from further contact with the case is a violation of RPC 5.3(c) and makes Mr. Berman and Mr. Matt responsible for Mr. Haegele's conduct. Moreover, the violation imputes that conduct and Mr. Haegele's knowledge

---

4. To be clear, the Court is not reading a vicarious liability standard into RPC 5.3(c). On the contrary, the Court finds that an attorney without actual knowledge of the nonlawyer's conduct will only be responsible for the conduct where the attorney would have known about the conduct but for the attorney's negligence or recklessness. Without defining precisely the moment where inadvertence becomes negligence, the Court finds that Hagens Berman's conduct was sufficiently reckless in these circumstances so as to make the attorneys responsible for Mr. Haegele's conduct.

of privileged information to Hagens Berman. As previously stated, the review of the Disk was an ethical violation and that conduct under RPC 5.3(c) is imputed to Mr. Berman and Mr. Matt.

Moreover, while this is not a case wherein Mr. Haegele came by knowledge of privileged information through prior employment, he nonetheless learned substantially related, privileged information about a party and currently works for the law firm representing the adverse party. Again, this case would be simple if Mr. Haegele had received the information while working for Perkins Coie and then had gone to work for Hagens Berman. In those circumstances it is clear that disqualification of Hagens Berman would be necessary under *United States v. Titan Pacific Construction Corp.*, absent "convincing evidence" that no confidences were shared between attorneys. 637 F.Supp. 1556 (W.D.Wash.1986); *see also* RPC 1.10(b)(3); *Daines*, 194 F.R.D. at 684 (rule stated in *Titan Pacific* applies equally to paralegals). The analogy is not perfect because, unlike a "side-switching" case, here there is no conflict of interest concern to be weighed. Nonetheless, the Court finds cases interpreting the imputed disqualification rule instructive because there is no doubt that Mr. Haegele's review of almost 1,000 privileged documents disqualifies him from further representation in this case. The obvious question is, therefore, shouldn't the attorneys who worked with and *are responsible for* Mr. Haegele's conduct also be disqualified from the case even where there is no "side-switching?" The answer to this question is an unqualified "yes."

 Analysis of imputed disqualification starts with the presumption that attorneys and paralegals who work together share confidences. *Titan Pacific*, 637 F.Supp. at 1564; *Williams*, 588 F.Supp. at 1043 ("In fact, a persuasive argument can be made that a nonlawyer would be more likely to reveal confidential information."). It is presumed that whatever privileged information Mr. Haegele gleaned from the Disk was shared with the attorneys working with Mr. Haegele. This presumption is, however, rebuttable with clear and convincing evidence that no confidences were transmitted. *Titan Pacific*, 637 F.Supp. at 1564. Hagens Berman has made absolutely no showing that Mr. Haegele's knowledge has not been transmitted in one form or another to the attorneys working on this case. Although Hagens Berman has had ample opportunity in responding to the original Motion to Disqualify, at oral argument, and in supplemental briefing, to supply the Court with affidavits showing the limited nature of Mr. Haegele's work or the institutional measures that would have prevented disclosure of privileged material, no such showing has been attempted. In fact, the only evidence presented suggests strongly that Mr. Haegele continued to work on the case and to present has not (at least on the record) been removed from the case. *See* Supplemental Brief in Opposition at 3, docket no. 77 (stating "Hagens Berman stands ready to supplement the record with 'certificates of assurance' that they will not discuss the case with or around the paralegal" but making no representation of the paralegal's past and current involvement in the case). Whether or not the privileged information was actually transmitted by Mr. Haegele to the attorneys working on this case, the presumption is that the information was shared, and belatedly removing Mr. Haegele from the case now does not rebut that presumption.

Accordingly, the Court finds by analogy to RPC 1.10 and under RPC 5.3(c), Hagens Berman is disqualified from further representation in this case.

## E. MEADOR ANALYSIS

] Beyond the three alternate theories for disqualification, both sides cite to cases from Texas that the Court finds instructive in setting forth an alternate framework for analyzing the facts of this case. The Texas Supreme Court has laid out the following six factors to aid in evaluating whether disqualification is called for when an attorney receives privileged information outside the normal course of discovery:

1) whether the attorney knew or should have known that the material was privileged;

2) the promptness with which the attorney notifies the opposing side that he or she has received its privileged information;

3) the extent to which the attorney reviews and digests the privileged information;

4) the significance of the privileged information; i.e., the extent to which its disclosure may prejudice the movant's claim or defense, and the extent to which return of the documents will mitigate that prejudice;

5) the extent to which movant may be at fault for the unauthorized disclosure;

6) the extent to which the nonmovant will suffer prejudice from the disqualification of his or her attorney.

*In re Meador,* 968 S.W.2d at 351–52. The Court finds the factors outlined above to be helpful in evaluating a motion to disqualify under the facts of this case. The six factors neatly incorporate the concepts of prejudice, bad faith, and knowledge elucidated by the Washington Supreme Court as elements to be weighed in evaluating a motion to disqualify. *See In re Firestorm,* 129 Wash.2d 130, 916 P.2d 411; *First*

*Small Business Investment Co. of California v. Intercapital Corp. of Oregon,* 108 Wash.2d 324, 331, 738 P.2d 263 (1987).

a. *Knowledge of the Privileged Material*

A staff member at Hagens Berman had knowledge that the firm was in possession of privileged materials in mid-September when Mr. Haegele first ran a search on the Disk and reviewed documents that prominently displayed a "Privileged" designation.[5] Many of the documents viewed by Mr. Haegele were clearly marked "Privileged," "Confidential," or "Attorney–Client Privileged." *See e.g.,* Exs. 12, 14, 16, 23, 24, 26, 53, 68, 99 to McMillan declaration, docket no. 49. There can be no question under these circumstances that attorneys at Hagens Berman knew they were in possession of privileged e-mails as early as September, 2000. Plaintiffs' contention that the review conducted by Mr. Haegele did not put him on notice that the documents being reviewed were privileged because the documents were only "quickly scanned" and "merely words on paper" is belied by Mr. Haegele's and Mr. Berman's declarations. Mr. Berman requested Mr. Haegele "to run searches on the disk to identify e-mails, if any, that were relevant to John's potential claims." Berman declaration at ¶5, docket no. 57. Mr. Haegele described his actions in performing a search that "returned thousands of e-mails which I reviewed on screen ... and printed only those e-mails that I felt were *relevant* ...." Haegele declaration at ¶5, docket no. 59 (emphasis added). Any review of documents that enabled Mr. Haegele to separate relevant from non-relevant would have put him on notice that within the contents of the Disk were privi-

**5.** The Court questions whether Hagens Berman ought to have been put on notice that it was in possession of privileged information as soon as it received a copy of a Vice Presi-

dent's hard drive. It seems logical to conclude that a highly placed executive would be involved in legal matters.

leged e-mails. *See e.g.,* Exs. 12, 14, 16 to McMillan declaration, docket no. 49. Hagens Berman's knowledge of possession of privileged information as early as September 2000, weighs heavily in favor of disqualification. This is particularly true where there is no rebuttal of the presumption of shared confidences. The Court would be faced with a different case if Mr. Haegele, when first reviewing the documents with the plain and clear warning of "attorney-client" and "privileged" markings had brought the matter to the attorneys and they had stopped all work and sealed or destroyed the documents.

b. *Notification of Access to Privileged Material*

■ Plaintiffs never explicitly notified defense counsel that they were in possession of privileged materials and made no attempt to either return the materials or cease review upon notice of possession. They attempt to excuse this failure by arguing that no attorney "knew" that they had privileged information. However, Plaintiffs are bound by the conduct and knowledge of Mr. Haegele who knew in September 2000 that the Disk contained privileged information. *See Daines,* 194 F.R.D. at 682.

Plaintiffs argue alternatively that upon receipt of Plaintiffs' Initial Disclosures Statement on February 26, 2001, Defendants were put on notice that Plaintiffs were in possession of the e-mail files from Richards's computer. Plaintiffs assert that every e-mail read by attorney Sean Matt that was culled out by the first search and sort of the Disk by Mr. Haegele was produced to Defendants on February 26, 2001, as part of the Initial Disclosures Statement. *See* Matt declaration at ¶ 6; Opposition Memorandum at 5–6. However, at this point it would not have been clear to Defendants that Plaintiffs had any more e-mails than what was turned over and therefore would not have

put Defendants on notice that Plaintiffs had copied the entirety of Richards' hard drive. On April 25, 2001, the extent of materials in Hagens Berman's possession was more clearly stated to defense counsel in Plaintiffs' Responses to Defendants' First Requests for Production of Documents on Defendants. *See* Ex. E to Schneider declaration, docket no. 48. The Response noted that "Plaintiff created a CD–ROM containing e-mail, planner, Word and Excel data documents retained from periods from 1995 through Summer 2000 … [and] … provided this CD–ROM to his legal counsel, Hagens Berman LLP." *Id.* at 4–5. The Response also noted that the Disk contained "approximately 100,000 e-mails" which is a strong indicator that it did not contain only relevant or select e-mails. *Id.* At the earliest, Plaintiffs' conduct put Defendants on notice that Hagens Berman might have access to privileged material at the end of April 2001, seven months after Hagens Berman took possession of and performed searches on the Disk and more than four months after this litigation was filed.

In any event, Plaintiffs' failure to explicitly notify Defendants of the disclosure of privileged information weighs in favor of disqualification. Moreover, simply informing Defendants that they were in possession of privileged material would not excuse or lessen the impact of the review of large numbers of privileged documents. The prejudice suffered by Defendants due to the loss of the protection of the attorney-client privilege is not assuaged by knowledge of that loss.

c. *Extent of the Review of the Privileged Information*

■ From the affidavits presented to the Court, review of the privileged information has been extensive but not in-depth. The only review of actually privi-

leged documents was limited to viewing the documents on a computer screen. There has been no showing that privileged documents were ever printed out into hard copy. *See* Matt declaration at ¶ 6, docket no. 61 (stating that all documents printed by Mr. Haegele upon the first search were designated for production to Defendants and Defendants agree that none of the produced documents are subject to attorney-client privilege); *Id.* at ¶¶ 9, 10 (stating that the second search using the terms "Locator" and "Moroney" did not produce any documents subject to InfoSpace's privilege). The Disk has since been turned over to the Court and the computer files erased. *See* Paris declaration at ¶ 7, docket no. 58; Haegele declaration at ¶ 8, docket no. 59. Nonetheless, almost a thousand privileged documents were read, at least briefly, by Mr. Haegele. Moreover, there has been no showing that Mr. Haegele has been screened in any manner from continuing involvement in this case. *See MMR/Wallace Power & Indus., Inc.*, 764 F.Supp. at 719 (finding that even where attorneys supplied affidavits stating that they had not received any confidential information, the possibility alone that privileged information had been released "threatens to taint the integrity of [the] case" and required disqualification). Nothing in the record suggests that Mr. Haegele has not continued to work on this case to the present time. As a paralegal having knowledge of the most sensitive attorney-client materials (many e-mails deal directly with allegations later made in the Plaintiffs' complaint in this case), Mr. Haegele would have had knowledge about these privileged matters. *Id.*, 726–27; *Oxford Systems, Inc.*, 45 F.Supp.2d at 1065–66 (stating that presumption of sharing of secrets and confidences cannot be rebutted by showing of minimal involvement by attorney in case).[6] The Court notes that discovery has continued to the present time. To the extent Mr. Haegele worked on discovery matters, he did so having the benefit of all of the sensitive attorney-client materials he reviewed many months before.

Accordingly, the Court finds that this factor weighs in favor of disqualification.

### d. *Significance of the Privileged Information*

■ Defendants argue that some of the privileged information that was on the Disk is relevant to Plaintiffs' claims. Specifically, Defendants contend that e-mails relating to the following matters are all relevant to Plaintiffs' claims: Infofind International/Bill Lucky; the *Robert Hoffer* and *Timothy Kay* lawsuits; the *Kent Plunkett* and *Mark Kaleem* lawsuits; actual or potential litigation against InfoSpace arising out of contract disputes; and contract negotiations. *See* McMillan declaration at ¶ 7(b), (c), (d), (f), (h), docket no. 49.

A careful in camera examination of the submitted e-mails demonstrates that the privileged communications are relevant to the factual predicate of Plaintiffs' RICO claims. The e-mails reference the claims underlying the alleged RICO violation and are therefore relevant and privileged. At oral argument, Mr. Berman conceded that documents that were reviewed by Hagens

---

6. Through his review of the e-mails, Mr. Haegele would have gained knowledge of privileged information directly related to the RICO claims asserted. *See, e.g.,* Ex. 12 (e-mail from Perkins Coie attorney discussing upcoming mediation with Bill Lucky and Infofind, a lawsuit specifically referenced in the Complaint at ¶¶ 75–83), Ex. 14 (e-mail from Per-

kins Coie discussing claims brought in lawsuit by former employee Robert Hoffer, a lawsuit specifically referenced in the Complaint at ¶¶ 70–74), Ex. 16 (e-mail from in-house counsel Ellen Alben discussing demand letter from plaintiff Kent Plunkett, a lawsuit specifically referenced in the Complaint at 62–65) to McMillan declaration, docket no. 49.

Berman were both privileged and relevant. *See* Exs, 12, 14, 16 to McMillan declaration, docket no. 49. Moreover, the sheer extent of the privileged material accessed by Hagens Berman is significant, whether or not it relates directly to this suit.

This factor weighs in favor of disqualification.

### e. *Fault of the movant*

██ This is not a case of inadvertent disclosure during the normal discovery process that could potentially constitute a waiver of privilege. Defendants did not provide any of the contested documents to Plaintiffs. Hagens Berman received the Disk outside of the discovery process and through no fault of Defendants. In fact, Defendants made every effort to protect their privileged and confidential documents by requiring employees to sign a Non–Disclosure Agreement ("NDA"). *See* Hall declaration at ¶¶ 3, 4, 5, docket no. 65. The NDA provides that "[a]t all times during my employment and thereafter I will not disclose to anyone outside InfoSpace nor use for any purpose other than my work for InfoSpace . . . c) any confidential or proprietary information which is circulated within InfoSpace via its internal email system or otherwise." Ex. B to Hall declaration, docket no. 65. At the time he supplied the Disk to Hagens Berman, Richards was a "highly placed executive" who was "in frequent communications with both in-house and outside legal counsel on numerous sensitive company-related legal matters." Hall declaration at ¶ 5, docket no. 65.[7] The fault for this disclosure lies squarely with Richards for copying and distributing the contents of his entire hard drive in violation of his NDA and Hagens Berman for requesting Richards to do so and not implementing appropriate safeguards to avoid disclosure of privileged documents.[8]

This factor also weighs in favor of disqualification.

### f. *Prejudice to the non-movant*

██ This action was filed nine months ago and is scheduled to go to trial in seven months. The discovery deadline is still more than three months away, as is the dispositive motions deadline. There is nothing to suggest that other counsel could not be found to represent Plaintiffs. Although RICO is more complex and involved than a standard breach of contract claim, the Court rejects the contention that Hagens Berman is the only firm that could or would handle the case.

Plaintiffs will be deprived of the counsel of their choice. However, this in not a case where Plaintiffs are losing their counsel through some action on the part of opposing counsel or a third party. Plaintiffs are directly responsible for the breach of privilege, and thus, the deprivation of counsel of choice does not weigh heavily against disqualification.

### F. APPROPRIATE REMEDY

The record before the Court shows the following: 1) Hagens Berman had access to extensive privileged material for eleven months; 2) Hagens Berman reviewed almost a thousand privileged documents; 3)

---

7. Again, the Court is surprised that Hagens Berman apparently failed to inquire whether Richards was subject to an NDA prior to requesting the copy of his hard drive.

8. Plaintiffs' argument that Defendants' conduct during the discovery process amounted to an acquiescence to Richards' supplying his attorneys with e-mails in violation of the NDA does not alter the underlying fact that it was Richards himself who created the current morass. Richards cannot now be heard to complain that his conduct should be excused because others ought to have mitigated the effects of his actions.

a portion of those documents was relevant to the instant case; 4) Hagens Berman did not adequately notify opposing counsel of its possession of the material; 5) the privileged information was supplied by Richards in violation of the NDA; and 6) Plaintiffs would not be severely prejudiced by the loss of their counsel of choice.

In determining when to exercise its discretion to disqualify counsel in those cases involving the loss of the protection of privilege, "the Court should resolve any doubts in favor of disqualification." *Oxford Systems, Inc.*, 45 F.Supp.2d at 1066 citing *Chugach Elec. Assn. v. United States District Court*, 370 F.2d 441, 444 (9th Cir.1966); *Kurbitz v. Kurbitz*, 77 Wash.2d 943, 946, 468 P.2d 673 (1970); *Harris By and Through Ramseyer v. Blodgett*, 853 F.Supp. 1239, 1273 (W.D.Wash.1994). In the instant case, although Hagens Berman has gone to great lengths and argued stridently that no confidences were revealed to or used by the firm, the undisputed facts of the case create a substantial taint on any future proceedings. Simply returning the Disk and removing the possibility of any future impingement on InfoSpace's attorney-client privilege will not remove the taint. "A reasonable member of the bar or the public would share ... the nagging suspicion that plaintiffs' trial preparation and presentation of their case had benefitted from confidential information obtained from [the Disk]." *Williams*, 588 F.Supp. at 1045. "The dynamics of litigation are far too subtle, the attorney's role in that process is far too critical, and the public's interest in the outcome is far too great to leave room for even the slightest doubt concerning the ethical propriety of a lawyer's representation in a given case." *Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 571 (2nd Cir.1973). The disclosure of privileged information cannot be undone in these circumstances. Therefore the Court finds that the only remedy to mitigate the effects of Hagens Berman's eleven month possession and review of the Disk is disqualification.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion to Disqualify, docket no. 46.

IT IS SO ORDERED.